MARRS, State Superintendent of Public Instruction, et al. v. MATTHEWS.
(No. 3022.)

(Court of Civil Appeals of Texas. Texarkana. March 13, 1925. Rehearing Denied March 19, 1925.)

1. **Schools and school districts** ⚖127—State may prescribe qualifications of teachers in public free schools.

No one has inherent right to teach in public free schools, but state may prescribe qualifications and name conditions under which privilege of teaching may be exercised.

2. **Schools and school districts** ⚖132—Statute empowering state superintendent of public instruction to cancel certificate of teacher who is "unworthy" held valid.

Provision of Vernon's Ann. Civ. St. Supp. 1918, art. 2814, empowering state superintendent of public instruction to cancel certificate of teacher issued under Vernon's Sayles' Ann. Civ. St. 1914, arts. 2780, 2788, who is unworthy, is not invalid as too vague; "unworthy" meaning lack of worth and absence of those moral and mental qualities required to enable one to render service essential to accomplishment of object which law has in view.

[Ed. Note.—For other definitions, see Words and Phrases, Unworthy.]

3. **Constitutional law** ⚖277(1)—Schools and school districts ⚖132—Certificate to teach in public free schools is mere license revocable by state at its pleasure, and not contract protected by due process clause.

Certificate to teach in public free schools is mere license revocable by state at its pleasure, and is not a contract protected by due process provisions of state or federal Constitutions.

4. **Licenses** ⚖38 — Person accepting license from state impliedly agrees to submit to tribunals created by state to determine his fitness to continue enjoying privilege granted.

Person who accepts license from state impliedly agrees to submit to tribunals which state has created for determining his fitness to continue enjoying privilege granted.

Appeal from District Court, Hopkins County; Newman Phillips, Judge.

Suit by F. E. Matthews against S. M. N. Marrs, State Superintendent of Public Instruction, and others. From an order overruling a motion to dissolve temporary writ of injunction, defendants appeal. Reversed and rendered.

Dan Moody, Atty. Gen., and Weaver Moore, Asst. Atty. Gen., for appellants.

Ramey & Davidson and Allen & Sellers, all of Sulphur Springs, for appellee.

HODGES, J. This appeal is from an order overruling a motion to dissolve a temporary writ of injunction. In October, 1924, the appellee filed his original petition in the

---

⚖For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

court below, alleging, in substance, as follows: He was at the time the holder of a permanent teacher's certificate issued by the state superintendent of public instruction and duly registered as required by law. By virtue of that certificate he was authorized to teach in the public schools of the state, and had a contract to teach in such schools in Hopkins county, Tex. The appellant Marrs, as state superintendent, was threatening and attempting to cancel that certificate on the ground that the appellee had participated in a fraudulent scheme for issuing teachers' certificates at examinations conducted in Hopkins county. Marrs was claiming to act under the provisions of article 2814 of the Revised Civil Statutes, which authorizes the state superintendent to cancel the certificate of any person who is unworthy to instruct the youth of the state. The validity of that statute is attacked upon the ground that the language used in describing the offense for which a certificate may be canceled is too vague and indefinite, and, further, because the statute attempts to confer judicial powers upon an executive department of the state government. The prayer of the petition was that a temporary injunction issue restraining Marrs, as state superintendent, and B. F. Vanderslice, county superintendent, from canceling the certificate, or in any manner interfering with the plaintiff's right to teach in the public schools.

Upon the presentation of that petition the trial court issued a temporary writ granting the relief prayed for.

Appellants Marrs and Vanderslice answered with a motion to dissolve the temporary injunction, and alleged that Marrs was not threatening to cancel the certificate until after an opportunity for hearing had been granted to the appellee as provided for in article 2814 of the Revised Civil Statutes; that some time before appellee's petition was filed, Marrs had notified appellee to appear before him as state superintendent of public instruction and show cause why the certificate theretofore issued should not be canceled on account of appellee having participated in fraudulent methods for obtaining teachers' certificates at examinations in Hopkins county. Before the date fixed for that hearing, the appellee through his attorney filed his application for this writ of injunction. All the pleadings involved were sworn to in legal form.

At a preliminary hearing upon the pleadings alone, the court overruled the motion to dissolve and continued the restraining order theretofore issued. No legal conclusions are found in the record, but we gather from the briefs and oral argument of counsel that the judgment of the trial court was based upon the conclusion that the statute was invalid for the reasons stated in the original petition and brief of counsel for appellee.

In the oral argument made in this court, it is not denied that Marrs, as state superintendent, is proceeding in accordance with the provisions of article 2814 of the Revised Civil Statutes, which is as follows:

"Any certificate may be canceled for cause by the authority issuing it; and the state superintendent of public instruction shall have power to cancel any certificate upon satisfactory evidence that the holder thereof is conducting his school in violation of the laws of the state or is a person unworthy to instruct the youth of this state; provided, if any teacher holding a certificate to teach in the public schools of this state, shall enter into a written contract with any board of trustees to teach in any public school of this state, and shall, after making such contract and without the consent of the trustees, abandon said contract, except for good cause, such abandonment shall be considered sufficient grounds for the cancellation of said teacher's certificate, and the same may be canceled upon the complaint of said trustees, or either of them; provided, that before any certificate shall be canceled, the holder thereof shall be notified, and shall have an opportunity to be heard, and he shall have the right of appeal from such decision to the state superintendent, and the state board of education; provided, that when the state superintendent shall have canceled the certificate, the appeal shall be to the state board of education; and provided further that the state superintendent shall have the authority, upon satisfactory evidence being presented, to reinstate any teacher's certificate theretofore canceled under the provisions of this article, and upon a refusal of the superintendent to so reinstate such certificate, the applicant shall have the right of appeal to the state board of education."

This statute mentions more than one cause for which a teacher's certificate may be canceled, but it is conceded that in this instance the state superintendent is acting under that portion of the article which authorizes the cancellation of a certificate because the holder "is a person unworthy to instruct the youth of this state." It is not claimed that the offense with which the appellee was charged by Marrs is not one which might evidence unworthiness to teach in the public schools as the term "unworthy" is used in the statute. It is conceded that if the language above quoted is sufficiently definite in stating what shall constitute a disqualification for holding a teacher's certificate, the court erred in refusing to dissolve the temporary writ theretofore issued. On the other hand, if the language is not sufficiently definite, the court correctly overruled the motion to dissolve, notwithstanding the particular offense presented against the appellee might evidence an unworthiness to hold a teacher's certificate.

[1] The public free school system in this state is largely the creature of the statute. While the Constitution directs its establishment, and makes provision for its support

and maintenance, the organic details of the system are left mainly to the Legislature. To that body is committed the power to provide where public schools shall be located, how they shall be controlled and managed, the selection of subjects that shall be taught in them, and to fix the qualifications of those who may teach. While any citizen may have the inherent right to teach a private school for the instruction of the young, no one may claim, an inherent right to teach in the public free schools. Since the state supplies the revenue to support such schools and pay the salaries of teachers, the state may justly claim the right to prescribe the qualifications of those who teach, and name the conditions under which the privilege of teaching may be exercised.

Article 2814, quoted above, is a part of the body of laws adopted in obedience to the constitutional mandate directing the establishment of a public free school system. Article 2780 makes the grant of a certificate authorizing the holder to teach in the public schools a prerequisite to the power of the holder to make any contract to teach with any board of school trustees. Following this provision are others which prescribe the method of examining applicants for teachers' certificates, prescribing the subjects upon which they shall be examined, and directing how proficiency shall be determined and attested. Article 2788 is as follows:

"No person shall receive a certificate authorizing his employment in the public free schools of Texas without showing to the satisfaction of the county superintendent that he is a person of good moral character, and has ability to speak and understand the English language sufficiently to use it easily and readily in conversation and in giving instruction in all subjects prescribed for the class of certificate for which he applies. The county superintendent, unless he knows the fact personally, shall require satisfactory proof of the applicant as herein required before issuing his recommendation to the county board of examiners."

The examination which follows the presentation of an application for a certificate is only for the purpose of ascertaining the scholastic attainments of the applicant. It makes no inquiry into moral fitness. But other provisions of the law make it plain that the Legislature intended to restrict the selection of teachers to those who had the moral as well as the educational qualifications required to impart wholesome instruction to the youth of the country. It was for this reason that the provision authorizing the cancellation of the certificate of a person who was found "unworthy to instruct the youth of this state" was inserted.

[2] In this appeal it is conceded that the Legislature had the power to exclude the immoral as well as the unlearned from the privilege of teaching in the public schools. The contention is that the term "unworthy," as used in article 2814, is too vague and uncertain to legally define a disqualification to further hold a teacher's certificate. If this article were a part of the Penal Code, and the term "unworthy" were used to describe an offense punishable in some form, a different question would be presented. The first three articles of the Penal Code require that offenses punishable by law be defined with a greater degree of certainty than is permissible in laws regulating civil and property rights. The authority to cancel a teacher's certificate for "unworthiness" is not conferred for the purpose of inflicting punishment upon the holder. While such cancellation may be punitory in its results, those results are only incidental; they are not the primary object of the law. The controlling purpose of the Legislature was evidently to insure the giving of wholesome instruction to pupils attending the public schools, by excluding teachers who were found to be morally or mentally unfit. The word "unworthy," as used in common parlance, has a well-defined signification. As here used, it means the lack of "worth"; the absence of those moral and mental qualities which are required to enable one to render the service essential to the accomplishment of the object which the law has in view. It may also include those positive traits of character which, notwithstanding excellent educational attainments, unfit one to impart proper instruction to the young. To call one "unworthy" is to impute moral delinquency to a degree of unfitness for the work in hand. There are many characteristics which may and should be considered in passing upon the issue of unworthiness in a teacher in the public schools. Different minds might reach different conclusions as to what qualities of character should render one unworthy to hold a certificate to teach. But there can be no difference of opinion about the fact that an unworthy person should not be permitted to teach in the public schools. What qualities, or lack of qualities, should render one unworthy would be difficult for legislative enumeration. They are so numerous, and their combinations so varied in different individuals, that a statute which undertakes to be more specific would either be incomplete, or so inflexible as to defeat the ends sought. In the very nature of the subject there must be lodged somewhere a personal discretion for determining who are the "unworthy." Appeals may be taken from the ruling of the state superintendent to the state board of education. If the aggrieved party thinks he has been arbitrarily dealt with by this tribunal, he may appeal to the courts for relief. At the very beginning the applicant for a certificate must present to the county superintendent satisfactory evidence of good moral character, and from the judgment of the county superintendent upon that question no appeal is provided for.

Counsel for appellee refer to the case of

Hewitt v. Board of Medical Examiners, 148 Cal. 590, 84 P. 39, 3 L. R. A. (N. S.) 896, 113 Am. St. Rep. 315, 7 Ann. Cas. 750, decided by the Supreme Court of California. In that case the court was passing upon the validity of a statute which provided that the board of examiners might revoke a physician's license for unprofessional conduct. In enumerating what might be considered unprofessional conduct, the statute named "all advertising of medical business in which grossly improbable statements are made." It was held that the expression "grossly improbable statements" was too indefinite as a legal definition of a disqualification to continue the practice of medicine. We shall not undertake to follow the reasoning of the court in that case. The facts, we think, are legally different from those involved in this case. But even if it were otherwise, we should not feel inclined to follow the rule or the reasoning adopted in that case.

[3, 4] A certificate to teach in the public schools is merely a license granted by the state, and is revocable by the state at its pleasure. Baldacchi v. Goodlett (Tex. Civ. App.) 145 S. W. 325; Stone v. Fritts, 169 Ind. 361, 82 N. E. 792, 15 L. R. A. (N. S.) 1149, 14 Ann. Cas. 295; 24 R. C. L. 613. It is not a contract protected by the due process provisions of either the state or the federal Constitution. Such a license is, presumably, accepted and held subject to the then existing and any future law providing for its forfeiture. The Legislature had authority to make the law as it is, and if the applicant did not wish to submit to the conditions affixed for its forfeiture he should not have accepted the certificate. One who accepts a license impliedly agrees to submit to the tribunals which the state has created for determining his fitness to continue in the enjoyment of the privilege granted. This is not a situation where the law attacked is thrust upon the complainant, nor is it one where an inherent right has been invaded, but is one in which the complainant has voluntarily sought and secured a statutory privilege to be enjoyed subject to statutory conditions.

The following cases, we think, sustain the legal principle applied in this appeal: Berry v. State (Tex. Civ. App.) 135 S. W. 631; Morse v. State Examiners, 57 Tex. Civ. App. 93, 122 S. W. 446; State v. I. & G. N. Ry. Co., 107 Tex. 349, 179 S. W. 867; Meffert v. State Board, 66 Kan. 710, 72 P. 247, 1 L. R. A. (N. S.) 811, and notes; Meffert v. Packer, 195 U. S. 625, 25 S. Ct. 790, 49 L. Ed. 350.

We are of the opinion that the statute is not subject to the objection made. That, we think, settles this controversy.

The judgment will therefore be reversed and judgment here rendered dissolving the temporary writ of injunction heretofore issued in the court below.

LEVY, J. I agree to the decision in full and find no fault therein, except I think the phrase "a person unworthy to instruct the youth of this state" is intended as a generic description of offenses or acts of dishonorable conduct and should be strictly so limited. As used, the word "unworthy" points to acts or offenses, immoral or unmoral or illegal in their nature. As so defined, as a standard of what personal conduct must be, the particular law is sufficiently definite to be understood and comprehended by those whom the law affects.