**Robert B. ADAMS, D.C., Appellant,**

v.

**TEXAS STATE BOARD OF CHIRO-PRACTIC EXAMINERS, Appellee.**

**No. 3–87–044–CV.**

Court of Appeals of Texas,
Austin.

Jan. 13, 1988.

Steven D. Ross, Greif & Ross, Austin, for appellant.

Jim Mattox, Atty. Gen., Molly D. Shannon, Asst. Atty. Gen., Austin, for appellee.

Before POWERS, BRADY and ABOUSSIE, JJ.

POWERS, Justice.

The Texas State Board of Chiropractic Examiners, after notice and hearing in the agency, revoked Robert B. Adams' license to practice chiropractic in Texas. Tex.Rev. Civ.Stat.Ann. art. 4512b, § 14(a) (Supp. 1988).[1] As he was privileged to do under the terms of § 14(d) of the statute, Adams sued in district court for judicial review of the Board's order. The district court hav-

---

1. In the text of our opinion, we shall refer to this statute as the "Act."

ing upheld the order, Adams appeals to this Court. Tex.Rev.Civ.Stat.Ann. art. 6252–13a, § 20 (Supp.1988).[2] We will affirm the district-court judgment.

### THE CONTROVERSY

Before turning to Adams' eleven points of error on appeal, we should set out some particulars of the controversy to assist in understanding the discussion that follows.

The Legislature has directed that the Board revoke or suspend a chiropractor's license, or impose other penalties, when it finds after notice and hearing that he has ·violated the Act or any rules of the Board, the proceeding being governed by APTRA. Art. 4512b, § 14(a), (f), (g). Section 14a of the Act lists 16 acts and omissions constituting grounds for revoking or suspending a license. One such ground is a licensee's violation or failure to comply with a Board rule adopted under the Act. In that regard, we note that the Board has adopted 12 rules of professional conduct. One such rule declares it unprofessional conduct for a licensee "to engage in sexual misconduct with a patient within the chiropractor/patient [sic] relationship."

Before the present controversy arose, Adams' license was suspended for two years by the terms of a Board order dated February 18, 1983. The ground for such suspension was Adams' sexual misconduct within the chiropractic-patient relationship. The order provided, however, that all but the first 30 days of the two-year suspension was "probated" on the condition that Adams' license "shall be revoked if," during the probation period, he was "found to be guilty of sexual misconduct within the doctor-patient relationship." Adams has never attacked this order directly or collaterally.

Some months later, in September 1983, the Board notified Adams of complaints made against him by several persons which, if true, would constitute subsequent violations of the Act and the Board's rules. In the notice, the Board set a date and time

for a hearing at its offices in Austin. Copies of the written allegations made by the complaining individuals, all patients of Adams, were attached to the notice. Adams appeared at the hearing but was not represented by a lawyer. After hearing evidence on the allegations, the Board ordered that Adams' license be revoked 15 days after the date of the order (February 29, 1984). In its order, the Board set out numerous findings of basic fact and five conclusions of law constituting the grounds for its decision to revoke Adams' license. The first four conclusions of law amount to determinations by the Board that Adams had violated specified sections of the Act or rules of the Board, or both. The fifth conclusion of law determines that he was again "guilty of sexual misconduct with a patient" in violation of a Board rule and § 14a(5) of the Act. The latter refers to "[g]rossly unprofessional conduct or dishonorable conduct of a character likely to deceive or defraud the public," making either type of conduct a ground for the revocation or suspension of a license. The Board's order then declares that the revocation was based *independently* on: (1) the findings of subsequent sexual misconduct, for which revocation was ordered by reason of the Board's earlier order of February 18, 1983; and, (2) the findings and conclusions made on the evidence adduced in the second hearing on October 28, 1983, as set out in the Board's order of February 29, 1984.

Adams sued for judicial review of the Board's order dated February 29, 1984. While his original petition is quite lengthy, it embodies two basic causes of action, both statutory in origin. The first cause of action seeks to reverse the Board's order of February 29, 1984 and remand the cause to the agency. This remedy is permitted by APTRA § 19(e) for suits authorized by the terms of § 14(d) of the Act:

> Any person whose license to practice chiropractic has been ·... revoked ... by the Board may take an appeal to any of

2. The Texas Administrative Procedure and Texas Register Act. We shall, in the text of our opinion, refer to the statute as "APTRA."

the district courts in the county of his residence ...

Adams' second cause of action is authorized by 42 U.S.C.A. § 1983 (1981) for any deprivation of rights, privileges, or immunities secured by the Constitution of the United States and the "laws." The statute provides that the person causing such deprivation "shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." *Id.* In association with his two statutory causes of action, Adams prayed for certain forms of declaratory relief authorized by the terms of the Uniform Declaratory Judgments Act, Tex.Civ.Prac. & Rem.Code §§ 37.001—37.011 (1986).

The trial court sustained special exceptions to Adams' invocation of the Uniform Declaratory Judgments Act and to his pleaded cause of action under 42 U.S.C.A. § 1983. The pertinent allegations were duly deleted in his first amended original petition and the suit was tried solely on his statutory cause of action under § 14(d) of the Act, an action governed by the terms of APTRA § 19. Based upon the record compiled in the Board proceeding, the district court sustained the Board's *final order* and this appeal ensued, wherein Adams brings 11 points of error that we shall group for discussion.

## THE RIGHT TO TRIAL BY JURY

Adams complains that the property interest signified by his license could not be taken from him constitutionally over his demand for a jury trial on the adjudicative facts necessary to revoke his license on any of the grounds set out in § 14a of the Act. We disagree.

■ In giving licensees a statutory cause of action for judicial review of the Board's orders, in § 14(d) of the Act, the Legislature did not provide for "de novo" review. Impliedly then, it intended a judge-only trial based on the agency record and under the "substantial evidence" rule; that is to say, the Legislature did not intend a scope of review that included any kind of original fact findings, whether made by the judge or a jury. APTRA

§ 19(e). But Adams' cause of action under § 14(d) is "purely statutory" in that the rights to be enforced under the Act and APTRA, and the remedies provided in the latter, did not exist at common law; hence, those statutory provisions "are mandatory and exclusive, and must be complied with in all respects or the action is not maintainable." *Mingus v. Wadley*, 115 Tex. 551, 285 S.W. 1084, 1087 (1926). Thus, Adams cannot invoke a right of judicial review under § 14(d) of the Act except on the terms established by the Legislature, and those terms obviously did not include the *statutory* right to a jury trial. Thus, the trial court properly denied Adams a jury trial on his statutory cause of action based on § 14(d) of the Act.

But Adams claims a *constitutional* right to a jury trial on the following theory. Before 1981, the Act provided for de novo review in district court of the Board's orders revoking a chiropractor's license. In that year, § 14(d) was enacted in its present form. *See* Acts 1981, 67th Leg., p. 2955, ch. 781 § 1. The effect of the amendment was to deprive licensees of any right to a jury trial under the previous provision for de novo review. Adams contends the purported amendment of the Act was unconstitutional because Art. I, § 15 of the Texas Constitution provides that "[t]he right of trial by jury shall remain *inviolate....*" (emphasis added). We disagree with Adams' conclusion and hold that the Legislature could constitutionally rescind the de novo-review provision and any right to a jury trial thereunder.

■ Where Art. I, § 15 of the Constitution provides "[t]he right of trial by jury shall remain inviolate," it means the Legislature may not abrogate the right to a jury trial if it existed by statute or under the common law *at the time the Constitution was adopted in 1876.* If the right existed under either source of law, in 1876, then Art. I, § 15 *preserves* that right thereafter. *White v. White*, 108 Tex. 570, 196 S.W. 508, 512 (1917); *see also State v. Credit Bureau of Laredo, Inc.*, 530 S.W.2d 288, 291 (Tex.1975). Therefore, Art. I, § 15 could not possibly limit the power of the Legisla-

ture to specify the form of judicial review in statutory actions brought on authority of § 14(d) of the Act because such actions were not authorized *at all* until 1949, the year the Legislature first attempted to regulate the practice of chiropractic by creating the board, assigning it the licensing function, and so forth. *See* Acts 1949, 51st Leg., p. 160, ch. 94.

To meet this obvious difficulty in his invocation of Art. I, § 15, Adams argues that chiropractic licenses and medical licenses were and remain legally *equivalent* because Art. XVI, § 31 of the Texas Constitution forbids the Legislature to give preference "to any schools of medicine." Hence, if a *physician* was entitled to a jury trial in 1876 on the adjudicative facts necessary to the revocation of his license, then chiropractors have the same right in 1987, so long as Art. I, § 15 remains in our Texas Constitution. Even assuming that a physician's license and a chiropractor's license are legal equivalents under Art. I, § 15 of the Constitution, we cannot find that "existing laws" in 1876 provided for a jury to assist in the revocation of a physician's license, whether as a matter of statutory right or as a common-law right. Although statutes enacted in 1873 and 1876 provided for the examination and licensing of physicians, by local examining boards, nothing in them deals with the matter of license revocation.[3]

Adams refers to an opinion in *Berry v. State*, 135 S.W. 631, 635 (Tex.Civ.App.1911, writ ref'd), wherein a jury *was* permitted to find the adjudicative facts necessary to revocation of a physician's license, in an *original* action in district court brought for that purpose under the terms of a 1907 statute that provided expressly for that cause of action. *See also Scott v. Texas State Board of Medical Examiners*, 384 S.W.2d 686 (Tex.1964) (noting that a jury trial had always been available under a 1905 statute providing for the revocation of physicians'

licenses). Neither opinion suggests in any respect that a jury was similarly used in 1876. Consequently, we cannot sustain Adams' argument insofar as he claims the benefit of any practice that existed in 1876 in suits looking to the revocation of physician's licenses. Our own research has not revealed such a practice in 1876. We need not, therefore, pursue other aspects of Adams' argument in that regard.

■ Adams also makes a slightly different argument—that his license represents a property right that could not be taken from him over his demand for a jury because "property" generally could not be constitutionally taken without a jury trial if a jury were demanded by the owner.[4] This argument denies, of course, the particularity normally associated with cases determining the scope of Art. I, § 15 of the Constitution; and, in consequence, the argument is conceptually flawed at the outset. *See* Green, *The Courts' Power Over Admission and Disbarment*, 4 Tex.L.Rev. 1, 26 (1925); Potts, *Trial by Jury in Disbarment Proceedings*, 11 Tex.L.Rev. 28, 49–52 (1932) (analyzing whether lawyer is constitutionally entitled to jury trial in disbarment actions based on some kinds of conduct *but not others*).

We are content to reject Adams' argument on a more obvious ground. While his license is unquestionably a property right, it is one that exists only by the terms of a statute that creates the right, provides for its grant and regulation, protects it from unauthorized competition, and provides the particulars governing its suspension and revocation. As between the licensing authority and the holder, the license may be revoked on statutory grounds under proper regulations and proceedings because,

> while the license to practice is a property right, and a valuable one at that, it is not such a vested right, in the constitutional sense, that it may not be revoked for good cause, and such revocation is not a

---

**3.** *See* 7 Tex.Laws, Ch. LV, at 526 (1873) and 8 Tex.Laws., Ch. CXL, at 1067 (1876).

**4.** Adams does not raise an issue concerning whether the Legislature could constitutionally delegate to the Board the power of deciding

controversies of the present kind, based on evidence adduced and the law applied in the agency proceeding. He contends, rather, that he was entitled to a jury trial *on judicial review* of the Board's decision.

taking of property without due process of law.

*Sherman v. State Board of Dental Examiners,* 116 S.W.2d 843, 846 (Tex.Civ.App. 1938, writ ref'd); *see also Marrs v. Matthews,* 270 S.W. 586, 589 (Tex.Civ.App.1925, writ ref'd) ("One who accepts a license impliedly agrees to submit to the tribunals which the state has created for determining his fitness to continue in the enjoyment of the privilege granted.")

In contending for a constitutional right to a jury trial, Adams invokes also the terms of Art. V, § 10 of the Texas Constitution:

> In the trial of all *causes* in the District Courts, the plaintiff or defendant shall, upon application made in open court, have the right of trial by jury; ....

(emphasis added). It has been questioned whether Art. V, § 10 guarantees a jury trial in some cases where the right would not exist by reason of Art. I, § 15. 1 Braden, *The Constitution of the State of Texas: An Annotated and Comparative Analysis* at 422 (1977) (The author also observes that judicial opinions often give the two constitutional provisions the same scope). In any case, the right to a jury under Art. 5, § 10 is not absolute in the sense that the right exists, on demand, in any district-court proceeding whatever. *State v. Credit Bureau of Laredo, Inc., supra,* at 293; Harris, *Jury Trial in Civil Cases—A Problem in Constitutional Interpretation,* 7 Sw.L.J. 1, 7–13 (1953) (each listing the various proceedings in district court which, while literally "causes," were not "causes" within the jury guarantee of Art. V, § 10).

Article V, § 10 must, of course, be accommodated with the delegation of a general police power to the Legislature, as implied in Art. III, § 1; that is, the Legislature's power to enact laws necessary for the protection of the health, safety, comfort, and welfare of the public. *Spinn v. City of Dallas,* 111 Tex. 350, 235 S.W. 513

(1921); *Ex parte Halsted,* 182 S.W.2d 479 (Tex.Cr.App.1944). In each instance where the Supreme Court has held a jury trial was not required under Art. V, § 10 of the Texas Constitution, the holding was based on the court's determination that special circumstances made a jury unsuitable in the particular proceeding in question. *State v. Credit Bureau of Laredo, Inc.,* 530 S.W.2d at 293.

■ Here, the "particular proceeding" in question is the *court's review* of the final order of an administrative agency to determine its validity under a regulatory statute. In such a district-court proceeding, we believe the Legislature may constitutionally provide for a non-jury trial, as it did in this instance under APTRA § 19(e) and § 14(d) of the Act, *if a jury trial would be incompatible with the concept of agency adjudication under the relevant statute and result in substantial interference with the agency's role in a valid statutory scheme enacted by the Legislature for the protection of the public health, safety, comfort, or welfare.*[5] If that is the case, a jury would be "unsuitable."

As a general proposition, a jury trial, as a means of finding the true facts of a controversy independently of those found by an administrative agency on evidence submitted to it, is entirely inconsistent with the fundamental concept behind assigning an agency the adjudicatory function. In assigning an agency that function, the Legislature ordinarily intends that the agency will exercise its expert knowledge, experience, and special facilities in finding facts, applying law, and formulating and applying administrative policy to accomplish the particular objectives set for the agency by the Legislature. *See* Jaffe, *Judicial Control of Administrative Action* at 90 (1965). Of course, the Legislature may itself determine that there is no incompatibility and provide for a jury trial, and such a provision must be enforced on judicial review

---

**5.** *Cf. Curtis v. Loether,* 415 U.S. 189, 194, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974) where this rationale is imputed to decisions that the Seventh Amendment, and its guarantee of a jury trial, does not generally apply on judicial review of adjudications by federal administrative agencies.

provided it is not unconstitutional. *Scott v. Texas State Board of Medical Examiners, supra,* 384 S.W.2d at 690–91.

In the Act we now interpret, however, the Legislature made the opposite determination; and it did so constitutionally, in our view, because a jury trial under § 14(d) of the Act would be incompatible with the concept of agency adjudication and interfere substantially with the Board's role in the statutory scheme set out in the Act. Some of the basic facts determined by the Board in the present case are obviously typical of those the jury might be called upon to decide in an ordinary civil "cause"; and, the jury might infer those basic facts quite easily from the evidence adduced in court. But it may not be said that the basic facts will always be of that nature in every cause of action authorized by art. 14(d) of the Act. Some adjudicative facts might very well require expert knowledge or experience to properly evaluate the evidence. *See generally* Stern, *Review of Findings of Administrators, Judges and Juries: A Comparative Analysis,* 58 Harv.L.Rev. 70 (1944).

More importantly, neither a jury nor a judge acting with the assistance of a jury is able to perform the essential function of drawing the necessary conclusions of law from the basic facts established in the case. To do so requires an expert understanding of the Board's own interpretation of its rules and the standards of conduct they imply in the particular circumstances—for example, what set of basic facts, in light of the total evidence, will warrant the conclusion that a chiropractor was grossly unprofessional or dishonorable in his practice, or that he violated a Board rule that may have a technical meaning.

■ Finally, the Legislature has charged the Board to regulate the practice of chiropractic throughout the State. It may hardly do so uniformly, effectively, efficiently, and practically if different courts may make different determinations throughout the State on matters involving the interpretation and application of the Act and the Board's rules in particular "causes." Shall the same act or omission constitute "gross-

ly unprofessional" practice in Dalhart but not in Brownsville or Houston? The statutory scheme simply would not work under those circumstances and the Legislature would have failed to protect the public in interests that required protection in the Legislature's view. For these reasons, we hold that Art. V, § 10 of the Constitution, properly construed, did not prohibit the Legislature's provision for judicial review without a jury.

■ We believe Adams' constitutional claims to a jury trial should be rejected for an additional reason. He availed himself of the licensed right to practice chiropractic under the provisions of the Act and enjoyed the privilege of doing so, free from the competition of any unlicensed practitioners. One provision of that regulatory scheme is that which pertains to the revocation or suspension of licenses on specified grounds, after notice and hearing, subject to judicial review under the substantial-evidence rule. The statutory provisions for such hearings, including those contained in APTRA, and for judicial review of the Board's decision, unquestionably meet the requirements of fundamental fairness. *Dixon v. Love,* 431 U.S. 105, 112–13, 97 S.Ct. 1723, 1727, 52 L.Ed.2d 172 (1977); *Ingraham v. Wright,* 430 U.S. 651, 674–79, 97 S.Ct. 1401, 1414–17, 51 L.Ed.2d 711 (1977). We conclude Adams waived his constitutional claims by obtaining the license and enjoying its benefits under statutory provisions that he cannot now attack as being unconstitutional. *Fahey v. Mallonee,* 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947).

■ Concerning Adams' contention that the trial court erred in requiring him to delete his statutory cause of action under the Civil Rights Acts of 1871 and his remedy under the Texas Uniform Declaratory Judgments Act, we hold the court did not err. The deleted cause of action and remedy would have been triable before a jury based upon a preponderance of the evidence. They would not have been directed at the same questions of law the court was required to determine in Adams' suit for judicial review of the Board's order, under

the substantial-evidence rule and the other grounds for reversing an agency order set forth in APTRA § 19(e)(1)–(5). "The courts cannot conduct both types of trial, or even a hybrid type of trial in the same suit." *Southwestern Bell Tel. v. Public Utility Com'n*, 571 S.W.2d 503, 511 (Tex. 1978).

Moreover, the court's requirement that Adams replead, necessitated by sustaining the Board's special exceptions, was not error. Texas R.Civ.P. 85, authorizing special exceptions, permits their use to challenge the legal sufficiency of the plaintiff's claims and to present dilatory matters shown on the face of his pleading, as well as their use as a means of indicating formal defects in particular pleadings. 2 McDonald, *Texas Civil Practice* § 7.19, at 183 (1982). Therefore, the trial court did not abuse its discretion in sustaining the special exceptions to Adams' pleading of the statutory causes of action.

## VALIDITY OF THE BOARD'S DETERMINATIONS

[9] The Board revoked Adams' license on the basis of five conclusions of law that it inferred from numerous findings of basic fact. Each conclusion of law dealt with a particular class of acts or omissions on Adams' part: (1) committing fraud and deception in certain insurance matters; (2) failing to use proper diligence and engaging in grossly inefficient practice; (3) performing breast examinations; (4) employing needles; and, (5) engaging in sexual misconduct with female patients. The Board concluded that each act or omission violated a specific statutory provision or Board rule, or both. In its final order, signed February 29, 1984, the Board declared its decision to revoke Adams' license on two *independent* grounds: the findings of fact and conclusions of law stated above; and, conclusion (5) coupled with the legal effect of the Board's previous order signed February 18, 1983.

In Adams' appeal, he attacks on several grounds the validity of the Board's findings of fact and conclusions of law as these are set out in the order signed February 29, 1984. He does not, however, assail the validity of the 1983 order or the 1984 findings and conclusion of law that established that he had engaged in sexual misconduct with female patients. It is undisputed, of course, that such misconduct occurred within the two-year period that began March 1, 1983, as set out in the 1983 order.

Because the Board declared in its 1984 order, in terms that are quite explicit, that it revoked Adams' license on the independent ground that he engaged in sexual misconduct within the meaning of the 1983 order, we are reasonably certain that the Board would have revoked Adams' license even if the Board had not found as it did relative to the other four categories of misbehavior. In these circumstances, we are unable to conclude that Adams' "substantial rights ... have been prejudiced" by the 1984 order, even if one concedes (as we do for purposes of discussion here) that the other four determinations are invalid for any of the reasons assigned by Adams. APTRA § 19(e). Consequently, we overrule Adams' points of error directed at the validity of those other determinations.

## WHETHER THE BOARD VIOLATED OR EXCEEDED ITS STATUTORY AUTHORITY

Adams contends that the actions, findings, inferences, conclusions and decision of the Board violated statutory provisions and exceeded the Board's statutory authority.

Adams argues that the Board had no authority to take disciplinary action against a chiropractor for violation of a Board *rule* because, during the relevant time period, the Act gave the Board authority to revoke or suspend a license only "[f]or failure to comply with, or the violation of, any of the provisions of this Act." Art. 4512b, § 14a. On September 1, 1983, this section was amended to give the Board the specific power to revoke or suspend a license "[f]or failure to comply with, or the violation of, ... *a rule adopted under this Act.*" [emphasis added]. Adams contends in addition that the purported amendment is void be-

cause it lacked a sufficiently informative title.

In interpreting an amendatory act there is a presumption of a change in legal rights. This is a rule peculiar to amendments and other acts purporting to change the existing statutory law. Singer, *Sutherland Statutory Construction*, § 22.30, at 265 (4th ed. 1985). Adams argues that the 1983 amendment must have made a change in the law; otherwise the added language would be unnecessary or merely redundant. However, the mere fact of an amendment does not indicate whether a right is added to or taken from the original act, or whether a provision in the original act is merely being interpreted.

Notwithstanding the omission in § 14a of a specific authority to discipline chiropractors for violations of the Board's rules, at the time of Adams misconduct, *another* section of the Act (§ 14(a)) has provided since 1981 that "[t]he Texas Board of Chiropractic Examiners shall revoke or suspend a license, probate a license suspension, or reprimand a licensee for any violation of the Act *or rules* of the Board." [emphasis added]. The Board and the courts have interpreted the statute in this way. *See, e.g., Johnson, D.C. v. Texas Board of Chiropractic Examiners*, 449 S.W.2d 145 (Tex.Civ.App.1969, no writ). Therefore, the presumption that the Legislature intended a change in the law by amending the statutory language is not applicable here, where the amendment merely reiterates that which the courts had interpreted the Act to mean. We hold that the Board did have the authority to discipline practitioners for a violation of its rules before the 1983 amendments because of the language of § 14(a) and the long-standing interpretation the Board and the courts have given the Act.

Adams also argues that § 4a of the Act, which was enacted in 1957 and purports to authorize the Board to make rules and regulations pertaining to the practice of chiropractic and the enforcement of the Act, was void in its very enactment. The alleged nullity is due to the failure of the Bill to comply with the then-existing requirements of Art. III, § 35 of the Texas Constitution:

> No bill [except general appropriation bills . . .] shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in its title, such act shall be void only as to so much thereof, as shall not be so expressed.

We need not address Adams' argument that the bill failed to give fair notice because Art. III, § 35 was amended in 1986 to provide that "A law, including a law enacted before the effective date of this subsection, may not be held void on the basis of an insufficient title." Tex. Const. art. III, § 35(c) (Supp.1987); *see, e.g., Dickens v. Court of Appeals for the Second Supreme Judicial District*, 727 S.W.2d 542, 546 (Tex.Cr.App.1987). Consequently, we reject Adams' argument that the statute is void.

## DENIAL OF DUE PROCESS OF LAW

Adams contends he was, in several ways, denied procedural due process of law in the Board adjudication. We shall discuss separately his various contentions.

### Notice

Adams complains that the notice given by the Board on its initiation of the proceedings was insufficient because it failed to notify him that he had a right to legal counsel, that he would be afforded an opportunity to obtain counsel, and that he had a right to call witnesses and present evidence in the proceeding. Consequently, he says, he was not represented by counsel during the proceedings, to his prejudice.

The record establishes without dispute that Adams was served written notice of the Board proceedings and appeared in response. The writings declared specifically that the hearing would be conducted in conformity with APTRA. The *statutory* provisions contained in APTRA expressly give Adams the rights he contends he is entitled to have as a matter of constitutional right or fundamental fairness; that is,

he has those rights by virtue of *statutory* enactment in any case. *See* APTRA § 14(b)–(*o*) (right of a party to call witnesses and present evidence); § 14(p) (right of cross-examination); § 14(r) ("all parties are entitled to the assistance of counsel," implying an opportunity to engage counsel when read in conjunction with other APTRA provisions); § 13(a) (ten-days minimum notice requirement); § 13(i) (provision for continuances). These statutory provisions were "more than ample to satisfy any due process concerns." *Lyng v. Payne,* 476 U.S. 926, 942, 106 S.Ct. 2333, 2343, 90 L.Ed.2d 921, 936 (1986) (agency regulations, published in Federal Register, gave notice of agency procedures adequate for due-process requirements).

### Findings Made Contrary to Due Process

Adams complains that certain findings of basic fact were made by the Board in a way that contravened the fundamental fairness implicit in the constitutional guarantee of due process of law. Specifically, he complains as follows: (1) certain findings of basic fact were made when the documents essential to those findings were not introduced in evidence; (2) certain other findings of basic fact were made on official notice, even though Adams did not receive adequate and timely notice of this procedure; and (3) certain findings of basic fact, relating to Adams taking blood specimens from patients, were made when he had no previous notice that this would subject him to disciplinary proceedings, especially when the Board's own interpretation of the relevant rule may have been to the contrary.

APTRA § 19(e) provides that we may reverse the final order of an administrative agency for specified reasons, when those errors prejudice the substantial rights of the complaining party. This statute does not distinguish between constitutional errors and errors based on other grounds. Even if Adams' due process rights were violated in the particulars claimed, we may not reverse the Board's order because it rests on an independent ground (sexual misconduct and the Board's 1983 order) that he has not assailed at all. *United*

States v. Lane, 474 U.S. 438, 445, 106 S.Ct. 725, 730, 88 L.Ed.2d 814, 823 (1986) (There is no rule that federal constitutional errors must always be deemed harmful, but it is duty of reviewing court to consider the record as a whole and to ignore errors that are harmless, including most constitutional errors).

### Findings Not Based on Evidence

Adams complains that he was denied due process when the Board made certain findings of basic fact based upon documents that were not introduced into evidence. These findings of basic fact concern matters unrelated to the sexual-misconduct ground. We conclude Adams was not prejudiced by the findings and we may not, in consequence, reverse the agency order for the reason he advances. APTRA, § 19(e); *United States v. Lane, supra.*

### Unconstitutionally Vague Statutes

[14] Adams complains tha. his license was revoked under authority of statutes that were unconstitutionally vague. He refers to the following paragraphs of § 14a, wherein the Legislature specified the grounds upon which licenses might be revoked by the Board: paragraph 2 (deception or fraud in the practice of chiropractic); paragraph 5 (grossly unprofessional conduct or dishonorable conduct likely to deceive or defraud the public); and, paragraph 14 (failure to use proper diligence or practice that is grossly inefficient). Paragraphs 2 and 14 concern matters unrelated to sexual misconduct with a patient; consequently, we need not consider their constitutionality because the Board's decision was based independently on its 1983 order and the sexual misconduct found in its 1984 order, as discussed above.

The sexual misconduct found by the Board in its 1984 order is conduct that the Board held to be within the scope of § 14a, paragraph 5: grossly unprofessional conduct or dishonorable conduct likely to deceive or defraud the public. We hold these expressions are not so vague that they fail to give reasonable notice that they included

sexual misconduct with a patient. *Cf. Jordan v. State Board of Insurance*, 160 Tex. 506, 334 S.W.2d 278 (1960) ("not worthy of public confidence" sufficiently definite standard for revoking insurance carrier's certificate of authority).

Holding that Adams' substantial rights have not been prejudiced for any of the reasons assigned by him in his appeal to this Court, we affirm the judgment below.