# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00370 -CV

### The State Board for Educator Certification, Appellant

### v.

### Erasmo Montalvo, Appellee

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
## NO. D-1-GN-12-002991, HONORABLE TIM SULAK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The State Board for Educator Certification appeals the district court's judgment reversing the Board's decision revoking the teaching certificate of Erasmo Montalvo. The Texas Education Agency (TEA), as the administrative arm of the Board, filed a petition with the State Office of Administrative Hearings (SOAH) alleging that Montalvo was "unworthy to instruct or supervise the youth of this state" and had violated the Educators' Code of Ethics. The administrative law judge (ALJ) found that the evidence failed to support the allegations and recommended that no sanction be assessed against Montalvo. The Board issued a final decision finding Montalvo unworthy to instruct and revoking his teaching certificate. Montalvo sought judicial review of the Board's decision. The district court reversed the decision and issued a permanent injunction enjoining revocation pending resolution of any appeal. For the reasons that follow, we reverse the

district court's judgment, dissolve the permanent injunction, and render judgment affirming the Board's decision.

## FACTUAL AND PROCEDURAL BACKGROUND

Montalvo was an elementary physical education teacher and high school track and field coach in the Rio Grande City Consolidated Independent School District. As high school track coach, Montalvo sometimes gave the female athletes massages or rub downs before practices and performed stretching exercises on them, including hamstring exercises.[1] V.S. was a female high school student on the track team coached by Montalvo. During the 2008 track season, V.S. suffered a hamstring injury. V.S. did not see a trainer for her injury but underwent stretching and rub downs by Montalvo and under his direction and ice baths and whirlpool therapy under his direction. After graduating in 2008, V.S. told her college counselor that Montalvo had sexually assaulted her. The counselor filed a complaint with the Starr County District Attorney's office, which indicted Montalvo on two counts of second-degree felony improper relationship between educator and student. Following a jury trial, Montalvo was acquitted. In 2011, TEA opened a disciplinary complaint against Montalvo and filed a petition with SOAH alleging that Montalvo is unworthy to instruct or supervise the youth of this state and seeking to revoke his educator certificate. *See* 19 Tex. Admin. Code §§ 249.3(45) (State Bd. for Educator Certification, Definitions) (defining "unworthy to instruct or supervise the youth of this state" as "the determination that a person is unfit

---

[1] The record reflects that hamstring stretches involve putting one hand on the athlete's inner thigh, pushing the athlete's other leg up so that the legs come apart, and looking down into the vicinity of the athlete's groin.

2

to hold a [teaching] certificate . . . .")[2] .15(a)(4), (b)(2) (Disciplinary Action by State Board for Educator Certification) (authorizing Board to revoke teaching certificate on satisfactory evidence that the person is unworthy to instruct or to supervise youth of state).

The Board also alleged that Montalvo had violated Standards 1.7, 3.2, 3.5, and 3.6 of the Educator's Code of Ethics. *See id.* §§ 247.2(1)(G) (Code of Ethics and Standard Practices for Texas Educators) (requiring educator to comply with state regulations, board policies, and other state and federal laws), (3)(B) (prohibiting educator from knowingly treating student in manner that adversely affects or endangers student's learning, physical or mental health, or safety), (3)(E) (prohibiting educator from engaging in physical mistreatment, neglect, or abuse of student), (3)(F) (prohibiting educator from soliciting or engaging in sexual conduct or romantic relationship with student). The specific conduct alleged included Montalvo's allowing V.S., both alone and with other students, to use the Jacuzzi in the master bath of his home; asking V.S. to lie on the bed in his master bedroom so he could massage her injured leg; engaging in sexual relations with V.S. on school property; exchanging approximately 480 phone calls with V.S. over a four month period, including many late at night; and engaging in inappropriate sexual contact with V.S. The ALJ found that there was insufficient evidence to support a finding that Montalvo had committed the alleged Code of Ethics violations and concluded that the findings of fact did not support a conclusion that he was unworthy to instruct. Accordingly, the ALJ concluded that the Board was not authorized to sanction Montalvo.

---

[2] Unless otherwise indicated, all citations to 19 Tex. Admin. Code are to rules promulgated by the Board and are to the versions in effect at the time of the conduct at issue.

The Board issued its Final Decision and Order revoking Montalvo's teaching certificate. It adopted all of the ALJ's findings of fact and six of the conclusions of law without change. It modified conclusions of law Nos. 7 and 8 and added a ninth conclusion of law. Conclusion of law No. 7 was changed from concluding that the findings did not support a conclusion that Montalvo is unworthy to instruct to a conclusion that, based on specified findings, Montalvo exceeded the bounds of the proper educator-student relationship and is unworthy to instruct. Conclusion of law No. 8 was changed from the conclusion that the Board is not authorized to take disciplinary action against Montalvo to the conclusion that the Board is authorized to do so. The Board added a ninth conclusion of law—that Montalvo's certificate should be sanctioned.

After exhausting his administrative remedies, Montalvo sought injunctive relief from and judicial review of the Board's decision. The district court reversed the Board's Final Decision and Order and issued a permanent injunction, to remain in effect until resolution of any appeal, enjoining the Board from treating as revoked or revoking Montalvo's educator certificate. The district court issued findings of fact and conclusions of law, including conclusions that the Board's decision was not supported by substantial evidence, was arbitrary and capricious, and was characterized by a clearly unwarranted exercise of discretion. This appeal followed.

## STANDARD OF REVIEW

We review a state agency's decision under the "substantial evidence" standard. *See* Tex. Gov't Code § 2001.174. This standard requires that we reverse or remand a case for further proceedings "if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are (A) in violation of a constitutional or statutory

4

provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error of law; (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." *Id.* § 2001.174(2). In reviewing fact-based determinations under this standard, we may not substitute our judgment for that of the agency but rather must determine whether, considering the reliable and probative evidence in the record as a whole, some reasonable basis exists in the record for the agency's action. *See id.* § 2001.174(2)(E); *Texas Indus. Energy Consumers v. CenterPoint Energy Hous. Elec., LLC*, 324 S.W.3d 95, 105 n.60 (Tex. 2010). "Thus, the agency's decision will be sustained if the evidence is such that reasonable minds could have reached the conclusion the agency must have reached in order to justify its action." *Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 453 (Tex. 1984). We presume that the agency's findings, inferences, conclusions, and decisions are supported by substantial evidence, and the burden is on the contestant to demonstrate otherwise. *See Froemming v. Texas State Bd. of Dental Exam'rs*, 380 S.W.3d 787, 790 (Tex. App.—Austin 2012, no pet.); *Pierce v. Texas Racing Comm'n*, 212 S.W.3d 745, 751 (Tex. App.—Austin 2006, pet. denied). We must affirm the agency's findings if they are supported by more than a scintilla of evidence. *Mireles v. Texas Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999) (per curiam).

The parties' issues also require us to construe applicable statutes and rules. Statutory construction is a question of law that we review de novo. *See Railroad Comm'n of Tex. v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). Our

primary concern is the express statutory language. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). We apply the plain meaning of the text unless a different meaning is supplied by legislative definition or is apparent from the context or the plain meaning leads to absurd results. *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010). We construe administrative rules in the same manner as statutes. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011).

## DISCUSSION

**Substantial Evidence**

In its first issue, the Board argues that the district court erred in failing to find substantial evidence in the record to support its Final Decision and Order. We agree. The Board is authorized to regulate educator conduct and issue sanctions. *See* Tex. Educ. Code §§ 21.031(a) (authorizing Board to regulate all aspects of certification and standards of conduct of public school educators), .041(b)(1) (requiring Board to propose rules providing for regulation of educators), (7) (requiring Board to propose rules providing for disciplinary proceedings, including revocation of educator certificate); 19 Tex. Admin. Code § 249.5(a)(3) (Purpose: Policy Governing Disciplinary Proceedings) (one purpose of chapter 249 is to regulate and enforce standards of conduct of educators). The Board has adopted and is charged with enforcing the Educators' Code of Ethics and may sanction educators for violations. *See* Tex. Educ. Code § 21.041(b)(8) (requiring Board to adopt and enforce Code of Ethics); 19 Tex. Admin. Code §§ 247.1(c) (Board is solely responsible for enforcing Code of Ethics for purposes related to certification disciplinary proceedings), .2 (Code of Ethics), 249.5(a)(5) (one purpose of chapter 249 is to enforce Code of Ethics), 249.15(a)(4), (b)(3)

6

(authorizing Board to revoke certificate based on satisfactory evidence that educator has violated Code of Ethics). In addition, the Board is authorized to sanction an educator if he is found to be unworthy to instruct or supervise the youth of this state. 19 Tex. Admin. Code § 249.15(a)(4), (b)(2) (authorizing Board to revoke certificate based on satisfactory evidence that educator is unworthy to instruct or supervise the youth of this state); *see also id.* §§ 247.1(d)(2) (a primary goal of Board is to ensure educators are worthy to instruct or supervise youth of state), 249.5(a)(2) (one purpose of chapter 249 is to ensure educators are worthy to instruct or supervise youth of state). At the time relevant to this appeal, "[u]nworthy to instruct or supervise the youth of this state" was defined as "the determination that a person is unfit to hold a [teaching] certificate . . . ." *Id.* § 249.3(45) (Definitions).

In its Final Decision and Order, the Board adopted the ALJ's findings of fact. In modifying conclusion of law No. 7 to conclude that Montalvo is unworthy to instruct, the Board cited the following findings of fact, which Montalvo did not challenge:

11. District protocol required that injured students be sent to the trainer.

14. V.S. did not visit the trainer about her injury.

18. Following her injury, V.S. underwent stretching, rub downs, ice baths, and whirlpool use under Mr. Montalvo's direction.

20. Mr. Montalvo gave V.S., and other students, rub downs.

22. On two or three occasions, student athletes visited Mr. Montalvo's home to use his Jacuzzi in the master bath. The athletes wore sports bras or bathing suit tops, and brief "bikers" shorts.

23. On one occasion, V.S. went alone to Mr. Montalvo's house to use the Jacuzzi.

7

26. From February through June 2008, Mr. Montalvo engaged in approximately 480 phone calls with [V.S.] with over 80 of the calls placed after 10:00 p.m.

There was also testimony concerning these matters. The athletic director for the school district testified that he believed it was not appropriate for a coach to allow a student athlete to use a Jacuzzi in the master bath of his home and that more than 400 phone calls between a teacher and a student was "a little excessive" and not appropriate. Similarly, the head athletic trainer at the high school testified that it had always been school district policy to report injuries to the athletic trainer and that Montalvo was not a licensed athletic trainer and could not practice athletic training. He stated that, although he had never seen Montalvo stretch female athletes, at one point he talked to Montalvo about stretching female athletes after two assistant coaches told him that it looked inappropriate. He also stated that while it is fine for a coach to rub down an athlete before a competition, it is not appropriate for a coach to massage or rub down an injured area as a form of therapy. He testified that treating student injuries at a trainer's home is "not an ethical thing to do" and "your house is an inappropriate place to do treatment." He also testified that there were whirlpools available at the stadium field house for Montalvo to use at all times.

On this record, we conclude that there was substantial evidence to support the Board's conclusions that Montalvo was unworthy to instruct or supervise the youth of this state, that the Board was authorized to take disciplinary action against him, and that Montalvo's educator certificate should be sanctioned. *See* Tex. Admin. Code §§ 249.3(45), .15(a)(4), (b)(2); *Texas Indus. Energy Consumers*, 324 S.W.3d at 105 n.60; *Charter Med.-Dallas, Inc.*, 665 S.W.2d at 453. Montalvo argues that the term "unworthy" is unconstitutionally vague and did not give him notice

8

that the conduct in which he was found to have engaged is proscribed. However, Montalvo neither asserted a challenge to the rules containing the term at the SOAH hearing nor raised this complaint in the district court, and he has therefore waived this argument. *See* Tex. R. App. P. 33.1. Moreover, the term "unworthy to instruct" has been held to be "sufficiently definite" "in stating what shall constitute a disqualification for holding a teacher's certificate." *Marrs v. Matthews*, 270 S.W. 586, 587 (Tex. Civ. App.—Texarkana 1925, writ ref'd).[3] Faced with a challenge to the term on the ground that it was "too vague and indefinite," the *Marrs* court stated that the term means "lack of 'worth'; the absence of those moral and mental qualities which are required to enable one to render the service essential to the accomplishment of the object which the law has in view." *Id.* at 588. The court concluded that:

> [d]ifferent minds might reach different conclusions as to what qualities of character should render one unworthy to hold a certificate to teach. But there can be no difference of opinion about the fact that an unworthy person should not be permitted to teach in the public schools. What qualities, or lack of qualities, should render one unworthy would be difficult for legislative enumeration. They are so numerous, and their combinations so varied in different individuals, that a statute which undertakes to be more specific would either be incomplete, or so inflexible as to defeat the ends sought. In the very nature of the subject there must be lodged somewhere a personal discretion for determining who are the "unworthy."

---

[3] At the time of the *Marrs* decision, the unworthy-to-instruct standard was contained in the Texas Revised Civil Statutes 1911, article 2814, which authorized the state superintendent of schools to cancel a certificate upon "satisfactory evidence" that the holder was "unworthy to instruct the youth of this State." *See* Act of Mar. 30, 1917, 35th Leg., R.S., ch. 157, sec. 1, 1917 Tex. Gen. Laws 366, 366. The quoted language was statutory until 1995 and still appears in the Board's regulations. *See* 19 Tex. Admin. Code §§ 247.1(d)(2), 249.3(59), 249.5(b)(2)(E), 249.15(b)(2) (2015).

*Id.* The court went on to observe that a certificate to teach in public school is a license granted by the state that is accepted and held subject to then-existing and future laws providing for its forfeiture and that by accepting the certificate, an educator impliedly agrees to submit to tribunals the state has created for determining his fitness to continue to enjoy the privilege granted. *Id.* at 589. Though these conclusions were reached some years ago, had Montalvo not waived this argument, we would find them applicable today.

Montalvo also argues that none of the individual findings of fact shows "actual wrongdoing" on his part and that the Board therefore had no authority to revoke his certificate. Although he does not specify what he contends constitutes "actual wrongdoing," Montalvo cites to findings of fact that the evidence was insufficient to show that he violated the Code of Ethics provisions as alleged by the Board. He also argues that his conduct did not violate any rules or established policies and, at most, violated only protocol or guidelines. However, Rule 249.15 provides a basis for revocation independent of any violation of the Code of Ethics, and the definition of "unworthy to instruct" includes no requirement that the educator violate any rule or policy. *See* 19 Tex. Admin. Code §§ 249.3(45), .15(a)(4), (b)(2); *Marks*, 319 S.W.3d at 663 (we apply plain language of rule). Montalvo further contends that his conduct did not cross the bounds of a proper educator-student relationship because nothing "improper" or of a sexual or romantic nature occurred. But the plain language of Rule 249.15 does not require an "improper" event or actual harm, and it is the duty of the Board to protect the safety and welfare of Texas schoolchildren, which includes assessment of potential harm. *See* 19 Tex. Admin. Code §§ 247.1(d)(1) (a primary goal of board is to protect safety and welfare of Texas schoolchildren), 249.5(a)(1) (one purpose of chapter 249 is

10

to protect safety and welfare of Texas schoolchildren); *Marks*, 319 S.W.3d at 663; *see also Whalen v. Rocksprings Ind. Sch. Dist.*, No. 065-R1B-284, 1985 TX Educ. Agency LEXIS 61, at \*14–17 (Tex. Educ. Agency July 10, 1985) (discussing factors school district should consider in determining whether teacher's conduct is potentially harmful).

We are also unpersuaded by Montalvo's argument that the unworthy-to-instruct standard was somehow usurped by the enactment of the Code of Ethics, which did not exist at the time of the *Marrs* decision. The Board is given broad discretion to carry out its duties to regulate educators, including the discretion to determine who is unworthy to instruct. *See* Tex. Educ. Code §§ 21.031(a), .041(a), (b)(1), (7), (8); 19 Tex. Admin. Code §§ 247.1(d)(2), .5(a)(2), .15(a), (b)(2); *see also Marrs*, 270 S.W. at 588 (there can be no dispute that unworthy person should not be permitted to teach, and nature of subject dictates discretion for determining "unworthy"). We agree with the Board that, based on the totality of the evidence of Montalvo's conduct, it was reasonable—not arbitrary and capricious or an unwarranted exercise of discretion—for the Board to conclude that Montalvo crossed the bounds of a proper educator-student relationship even in the absence of any violations of the Code of Ethics or other rules or policies. *See* Tex. Gov't Code § 2001.174(F); *Texas Indus. Energy Consumers*, 324 S.W.3d at 105 n.60; *Charter Med.-Dallas, Inc.*, 665 S.W.2d at 453; *SWEPI LP v. Railroad Comm'n of Tex.*, 314 S.W.3d 253, 265 n.13 (Tex. App.—Austin 2010, pet. denied) (concluding commission's orders were not unwarranted exercise of discretion where commission properly interpreted and applied applicable rule and interpretation was reasonable); *Judson Indep. Sch. Dist. v. Ruiz*, No. 04-13-00706-CV, 2015 Tex. App. LEXIS 3055, at \*20 (Tex. App.—San Antonio Mar. 31, 2015, pet. filed) (mem. op.) (where school district's

11

decision to terminate educator manifested rational connection to facts and reflected reasoned decision making, decision was not arbitrary and capricious); *see also Marrs*, 270 S.W. at 588; *cf. State of Texas' Agencies & Insts. of Higher Learning v. Public Util. Comm'n* of Tex., 450 S.W.3d 615, 654 (Tex. App.—Austin 2014, pet. filed) (holding it was arbitrary and capricious for commission to reach incongruous conclusions); *Ford Motor Co. v. Motor Vehicle Bd.*, 21 S.W.3d 744, 766 (Tex. App.—Austin 2000, pet. denied) (where board's action was inconsistent with regulatory scheme, it was unwarranted exercise of discretion). We therefore conclude that there is more than a scintilla of evidence to support the Board's decision to revoke Montalvo's educator certificate based on a determination that he was unworthy to instruct or supervise the youth of this state. *See Mireles*, 9 S.W.3d at 131. We sustain the Board's first issue.

**Amendment of PFD**

In its second issue, the Board argues that it properly amended the ALJ's PFD. The ALJ concluded that:

> 7. The foregoing Findings of Fact do not support a conclusion that Mr. Montalvo is a person unworthy to instruct or supervise the youth of this state.
>
> 8. [The Board] is not authorized to take disciplinary action against Respondent's Texas Educator Certificate.

The Board modified these conclusions and added a ninth, as follows:

> 7. Based on Findings of Fact 11, 14, 18, 20, 22, 23 and 26, Respondent exceeded the bounds of the proper educator–student relationship and is a person unworthy to instruct or supervise the youth of this state.

12

8.     [The Board] is authorized to take disciplinary action against Respondent's Texas Educator Certificate.

9.     Respondent's educator certificate should be sanctioned.

The Board contends that these changes were not arbitrary and capricious and that its changes were reasonable given the findings of fact. Montalvo argues that the changes "fly in the face of the Findings of Fact it adopted as its own." Having concluded that it was reasonable for the Board to determine that Montalvo crossed the bounds of the proper educator-student relationship and that there was substantial evidence to support the Board's decision that Montalvo is unworthy to instruct and its order revoking his educator certificate, we also conclude that the Board's changes to the ALJ's conclusions of law were not arbitrary or capricious. *Cf. Public Util. Comm'n of Tex. v. Gulf States Utils. Co.*, 809 S.W.2d 201, 211 (Tex. 1991) ("Agency decisions that are not supported by substantial evidence are deemed arbitrary and capricious.").

The Board also contends that its changes were made in compliance with section 2001.058 of the Administrative Procedure Act. *See* Tex. Gov't Code § 2001.058. Section 2001.058 provides that a state agency may change an ALJ's conclusion of law if it determines that the ALJ misinterpreted or misapplied the applicable law and states in writing the specific reason and legal basis for the change. *See id.* § 2001.058(e). In its Final Decision and Order, the Board stated that the ALJ failed to appropriately interpret and apply Board policies and rules, specifically the policy to ensure that educators are worthy to instruct and supervise the youth of the state, as articulated in Rule 249.15(b)(2) and upheld in *Marrs*. The Board explained that protecting the safety and welfare of Texas schoolchildren is a primary purpose of the Board, that educators must be held to the highest

13

standard, that an educator's fitness is determined by all relevant conduct, not just criminal violations, and that educators must understand the boundaries of the educator-student relationship that they are trusted not to cross. The Board cited Montalvo's conduct involving female students using his home Jacuzzi, approximately 480 phone calls, rub downs, ice baths, and failure to send an injured athlete to the trainer as conduct the Board considers to have crossed the bounds of the appropriate educator-student relationship, making Montalvo not presently worthy to hold a Texas educator certificate. Although Montalvo challenges the Board's contention in its briefing that his "poor judgment" rendered him unworthy to instruct, he does not argue that the Board's Final Decision and Order does not meet the requirements of section 2001.058(e). We conclude that the Board provided a specific reason and legal basis for its modifications in compliance with section 2001.058(e). *See id.*; *Froemming*, 380 S.W.3d at 793 (concluding that board's explanation of how ALJ failed to apply or interpret applicable law, rules, and policies met requirements of Board of Dental Examiners Rule 107.51(a)(1), which adopts requirements of section 2001.058(e)); *Pierce*, 212 S.W.3d at 751 (holding agency met requirements of section 2001.058(e) where it provided comprehensive explanation). We sustain the Board's second issue.

**Permanent Injunction**

In its fourth issue, the Board argues that the district court abused its discretion in issuing a permanent injunction prohibiting the Board from revoking or treating as revoked Montalvo's educator certificate "until, in the case of any appeal taken by [the Board], a ruling from the appellate court issues." Because we reverse the district court's judgment and render judgment affirming the Board's decision, we dissolve the permanent injunction. We therefore do not reach

14

the Board's fourth issue.[4]  *See* Tex. R. App. P. 47.1 (opinions must be as brief as practicable while addressing every issue raised and necessary for final disposition).[5]

## CONCLUSION

We reverse the district court's judgment, dissolve the permanent injunction ordered by the district court, and render judgment affirming the Board's Final Decision and Order.

_____
Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Bourland

Reversed and Rendered

Filed:  November 24, 2015

_____

[4]  We also do not reach the Board's third issue, in which it argues that its standard of unworthy to instruct is not unconstitutionally vague.  There is no indication in the record that this issue was presented to the ALJ or to the district court, and the district court's order does not include a finding that the standard is unconstitutionally vague.  Therefore, this matter is not before us.  *See* Tex. R. App. P. 33.1(a)(1) (complaint to trial court is prerequisite to presenting complaint for appeal); *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 484 n.9 (Tex. 2015) (in appeal of summary judgment, where party did not move for summary judgment on plaintiffs' claims, whether plaintiffs raised fact issue as to elements of those claims was not before court).

[5]  All pending motions are dismissed as moot.