# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00128-CV

**Gilbert Gomez, Appellant**

v.

**Texas Education Agency, Educator Certification and Standards Division,
and Robert Scott, Commissioner of Education, in his Official Capacity, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
### NO. D-1-GN-09-000309, HONORABLE GISELA D. TRIANA-DOYAL, JUDGE PRESIDING

## O P I N I O N

Gilbert Gomez appeals the district court's judgment affirming the final order of the State Board for Educator Certification (the Board), which revoked his Texas Educator Certificate.[1] The Board ordered the certificate revocation after determining that Gomez was "unworthy to instruct or supervise the youth of the state" under its rules. In three issues, Gomez contends that the district court erred by affirming the Board's final order. We will affirm the district court's judgment because we find no error in the Board's final order.

---

[1] Gomez styled his suit for judicial review and this appeal as "Gilbert Gomez v. Texas Education Agency and Robert Scott, Commissioner of Education, in his Official Capacity," but the Texas Education Agency (TEA) asserts that Mr. Scott is not a proper party because the Board, not the TEA, rendered the final order in this case. TEA staff provides administrative functions and services to the Board, *see* Tex. Educ. Code Ann. § 21.035 (West Supp. 2010), but the TEA did not revoke Gomez's educator certificate.

**STATEMENT OF FACTS**

On August 7, 2003, Sergeant Joe Cavazos, an officer for the Texas Alcoholic Beverage Commission, was conducting an inspection at a bar in McAllen, Texas, known as Graham Central Station.[2] Around midnight, a female patron approached Sergeant Cavazos to report that she had observed a male standing by the dance floor with his penis outside his pants. When Sergeant Cavazos approached the dance floor, he saw a male about ten to fifteen feet from the dance floor holding his penis in his hand and staring at the dancers as he rubbed himself. Sergeant Cavazos immediately grabbed the male and took him outside the nightclub. When Sergeant Cavazos approached him to take him outside, the male said "wait, wait" and tried to zip his pants up. Sergeant Cavazos identified the male as Gomez because Gomez provided his Texas driver's license to Sergeant Cavazos. As a result of this incident, Gomez was arrested and charged with indecent exposure. Sometime later, the charges were dismissed. Gomez was never convicted of a crime and his arrest records were later expunged.

Gomez held an active Texas Educator Certification at the time of the incident and was employed by Donna Independent School District during the 2003-2004 school year. In October 2006, the Board filed a petition against Gomez with the State Office of Administrative Hearings (SOAH), alleging that Gomez's conduct at the nightclub indicated that "he is a person unworthy to instruct or supervise the youth of the State of Texas" and seeking the permanent revocation of his educator certificate. *See* 19 Tex. Admin. Code § 249.15 (2011) (State Bd. for Educator Certification, Disciplinary Action by State Bd. for Educator Certification).[3] The case went to an administrative law

---

[2] The facts recited herein are taken from the testimony and exhibits admitted at the contested-case hearing.

[3] Since Gomez's contested-case hearing occurred, the Board has amended this rule and some other rules to which we will refer. When there has been no substantive change to the rule or its

judge (ALJ) for a contested-case hearing. Before the hearing, Gomez filed a motion for no-evidence summary disposition, arguing that because his arrest record had been expunged, the Board could not produce any evidence in support of its claim because the expunction order and the code of criminal procedure prohibited the Board from using any records or files concerning Gomez's arrest. *See* Tex. Code Crim. Proc. Ann. § 55.03 (West 2006). The Board responded that Sergeant Cavazos was an eyewitness and that his testimony about the incident was not prohibited, only the use of any arrest records. The ALJ denied Gomez's motion, but noted that "the ALJ will not allow any witness to testify at the hearing based on expunged records as opposed to the witness's independent recollection of events."

The ALJ conducted a one-day evidentiary hearing. At the contested-case hearing, Gomez sought a ruling on his motion to exclude Sergeant Cavazos's testimony, urging that the testimony would be derived from the expunged arrest record. The Board opposed the motion to exclude evidence, asserting that Sergeant Cavazos's testimony would be based on his memory as an eyewitness to the incident. The ALJ allowed Sergeant Cavazos to testify on the record, but did not admit his testimony into the record until after the hearing's conclusion. In the order overruling Gomez's motion to exclude evidence that was issued after the hearing, the ALJ noted that Sergeant Cavazos testified that he had not refreshed his memory from the arrest record or any other record subject to the expunction order.

During the hearing, the Board offered Sergeant Cavazos's testimony, and Gomez offered his own testimony, along with that of two character witnesses, both educators who had worked in the Donna Independent School District for many years. Gomez testified that he did not expose himself,

relevant portions, as with this rule, we will refer to the current rules for convenience. We will cite to the prior rule when a substantive amendment has occurred.

3

but admitted that he was at Graham Central Station on August 7, 2003, and was escorted out of the nightclub by a security person. Sergeant Cavazos testified to his recollection of the incident as described above, but upon cross-examination, he admitted that he had been able to recall the date of the incident and Gomez's name only after refreshing his memory by reviewing the Board's petition.

After the record was closed, the ALJ issued a proposal for decision (PFD) that included eleven findings of fact and fifteen conclusions of law. The ALJ concluded that two stated purposes of the Board's rules are to insure that educators are morally fit and worthy to instruct or supervise the youth of the state and to enforce the educators' ethics code. *See* 19 Tex. Admin. Code § 249.5 (2011) (State Bd. for Educator Certification, Purpose). The ALJ found that Gomez engaged in the alleged conduct and "exposed his penis in public with reckless disregard as to whether others could see it and for purposes of sexual gratification." The ALJ concluded that Gomez's conduct was an act of moral turpitude, as defined by the Board's rules, and that an act of moral turpitude can preclude a finding of good moral character, as defined by the Board's rules. *See* 19 Tex. Admin. Code § 249.3(19), (25) (2007), *amended* 34 Tex. Reg. 3944 (2009), *amended* 35 Tex. Reg. 11249 (2010) (State Bd. for Educator Certification, Definitions).[4] The ALJ concluded, however, that the Board did not have a basis to impose discipline against Gomez's educator certificate, because she interpreted the Board's definition

---

[4] Gomez's contested-case hearing was held before the ALJ on December 6, 2007. The ALJ issued the PFD on February 14, 2008. The Board had proposed amendments to the rules earlier in 2007, and the amended rules became effective December 16, 2007. *See* 32 Tex. Reg. 9112 (2007) (to be codified at 19 Tex. Admin. Code § 249.3) (proposed August 31, 2007) (State Bd. for Educator Certification). The definitions of "good moral character," "moral turpitude," and "unworthy to instruct" were not substantively changed by this amendment, but they were renumbered. *See* 32 Tex. Reg. 5608 (2007), *adopted* 32 Tex. Reg. 9112 (2007). Throughout this opinion, we refer to section 249.3 as amended effective December 16, 2007 to conform with the ALJ's references in the PFD.

4

of "unworthy to instruct or to supervise the youth of this state" as including only conduct that *violated* chapter 21, subchapter B of the education code, which governs the certification of educators in the public education system. *See id.* § 249.3(45) (2007) (State Bd. for Educator Certification, Definitions) (defining "unworthy to instruct" as "the determination that a person is unfit to hold a certificate under the [Texas Education Code], Chapter 21, Subchapter B"); *see also generally* Tex. Educ. Code Ann. §§ 21.001-.707 (West 2006 & Supp. 2010). Under the ALJ's interpretation, before the Board could revoke an educator certificate, the educator would have to have been *convicted* of one of the crimes listed in two code provisions; Gomez had not been convicted of a crime. *See* Tex. Educ. Code Ann. §§ 21.058 (West 2006) (requiring Board to revoke educator certificate held by person convicted of certain criminal offenses), .060 (West Supp. 2010) (allowing Board to revoke educator certificate if person has been convicted of certain felony or misdemeanor offenses related to duties and responsibilities of education profession).

In its final decision and order, the Board adopted the ALJ's findings of fact in their entirety and adopted all but two of the ALJ's conclusions of law (numbers 10 and 15). The Board rejected these two conclusions of law because it concluded the ALJ did not properly apply or interpret applicable law, the agency's rules, and prior administrative decisions. *See* Tex. Gov't Code Ann. § 2001.058(e)(1) (West 2008) (providing that agency may change ALJ's finding of fact or conclusion of law or may vacate or modify order issued by ALJ if agency determines that ALJ "did not properly apply or interpret applicable law, agency rules, . . . or prior administrative decisions"). In their place, the Board adopted two new conclusions of law. The first stated that Gomez's conduct described in findings of fact numbers 6 and 7 "establishes that [Gomez] is unworthy to instruct or supervise the

5

youth of the state."[5] The second stated that Gomez's educator certificate should be revoked.[6] *See* 19 Tex. Admin. Code § 249.15(b)(2) (allowing Board to revoke certificate based on satisfactory evidence that person is unworthy to instruct). Consequently, the Board ordered Gomez's educator certificate revoked.

Gomez sought judicial review of the Board's order in district court. After a hearing on the merits, the district court affirmed the Board's final decision and order. This appeal followed.

## DISCUSSION

Gomez asserts that the district court erred by affirming the Board's final order for three reasons. Gomez first argues that the Board acted in excess of its statutory authority, in an arbitrary or capricious manner, and abused its discretion by rejecting the ALJ's recommendation and revoking his educator certificate, despite having no basis to impose discipline against him. In his second issue,

---

[5] Finding of fact number 6 states that "[w]hen he approached the dance floor, Sgt. Cavazos saw [Gomez] rubbing on his exposed penis with his hand." Finding of fact number 7 states that "[o]n August 3, 2003, [Gomez] exposed his penis in public with reckless disregard as to whether others could see it and for purposes of sexual gratification."

[6] The Board also sought to revoke Gomez's certificate on the grounds that his conduct demonstrated that he "is a person who conducted school or education activities in violation of law" and had "violated provisions of the educator's code of ethics, including . . . Standard 1.7 (failing to comply with state regulations, written local school board policies, and other applicable state and federal laws)." *See* 19 Tex. Admin. Code § 249.15 (2011) (State Bd. for Educator Certification, Disciplinary Action by State Bd. for Educator Certification). The ALJ found that Gomez's conduct "did not involve: a student or minor; school activities or property; controlled substances; professional advancement; or other educators, nor did it result in a criminal conviction or adjudication of guilt under criminal law." She also concluded that the Board "failed to show that Respondent's conduct violated a state regulation or written local school board policy" and that neither the Board nor SOAH had jurisdiction to decide whether Gomez's conduct violated the only pertinent state or federal law, penal code section 42.01(10). *See* Tex. Penal Code Ann. § 42.01(10) (West 2011) (reckless exposure of anus or genitals in public place). The Board adopted this finding and these conclusions in its final decision and order.

6

Gomez contends that Sergeant Cavazos's testimony should have been excluded because its admission violated the expunction order. Gomez asserts in his third issue that the district court erred by denying his motion for leave to present additional evidence to the Board.

**Standard of review**

The substantial-evidence standard of the Texas Administrative Procedure Act (APA) governs our review of the Board's final order. *See* Tex. Gov't Code Ann. § 2001.174 (West 2008). The APA requires us to reverse or remand an agency's decision that prejudices the appellant's substantial rights because the administrative findings, inferences, conclusions, or decisions (1) violate a constitutional or statutory provision, (2) exceed the agency's statutory authority, (3) were made through unlawful procedure, (4) are affected by other error of law, (5) are not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole, or (6) are arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Id.* § 2001.174(2)(A)-(F). An agency acts arbitrarily if it makes a decision without regard for the facts, if it relies on fact findings that are not supported by any evidence, or if there does not appear to be a rational connection between the facts and the decision. *See City of Waco v. Texas Comm'n on Envtl. Quality*, 346 S.W.3d 781, 819-20 (Tex. App.—Austin 2011, pet. filed). In other words, we must remand for arbitrariness if we conclude that the agency has not "'genuinely engaged in reasoned decision-making.'" *Id.* (quoting *Starr Cnty. v. Starr Indus. Servs., Inc.*, 584 S.W.2d 352, 356 (Tex. Civ. App.—Austin 1979, writ ref'd n.r.e.)). Otherwise, we may affirm the administrative decision if we are satisfied that "substantial evidence" exists to support it. Tex. Gov't Code Ann. § 2001.174(1).

The Legislature has charged the Board with regulating the certification process and standards of conduct for educators and has given it broad discretion to adopt rules for disciplining

7

educators. *See* Tex. Educ. Code Ann. §§ 21.031 (West 2006), .041 (West Supp. 2010). When there is vagueness, ambiguity, or room for policy determinations in a statute or regulation, we generally defer to the agency's interpretation unless it is "plainly erroneous or inconsistent with the language of the statute, regulation, or rule." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011). But this deference to the Board's interpretation is not conclusive or unlimited—we defer only to the extent that the Board's interpretation is reasonable. *See id.* We construe administrative rules in the same manner as statutes, using traditional principles of statutory construction. *Id.*

When we construe administrative rules and statutes, our primary objective is to give effect to the intent of the issuing agency and legislature, "which, when possible, we discern from the plain meaning of the words chosen." *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) (addressing statutory construction); *see Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999) (addressing rule construction). We consider statutes and rules as a whole rather than their isolated provisions. *TGS-NOPEC*, 340 S.W.3d at 438-39. We presume that the legislature chooses a statute's language with care, purposefully choosing each word it includes, while purposefully omitting words not chosen. *Id.* We may consider other factors in ascertaining legislative or administrative intent, including the law's objective, its history, and the "common law or former statutory provisions" concerning the same or similar subjects. Tex. Gov't Code Ann. § 311.023(1), (3), (4) (West 2005); *see also Shumake*, 199 S.W.3d at 284.

**Board's interpretation of "unworthy to instruct"**

Gomez's appeal centers on the Board's decision to (1) reject the ALJ's conclusion that his conduct provided no basis for the Board to discipline him and (2) instead conclude that Gomez's conduct at the nightclub established that he is "unworthy to instruct" and that his educator certificate

8

should be revoked.  As defined by title 19, section 249.3(45) of the administrative code, "unworthy to instruct or to supervise the youth of this state" means "the determination that a person is unfit to hold a certificate under the [Texas Education Code], Chapter 21, Subchapter B . . . ."  Gomez urges that the ALJ's interpretation of the education code and the definition of "unworthy to instruct"—which would require that an educator be convicted of one of the crimes listed in two code provisions before his certificate could be revoked—is correct, and thus, the Board acted in excess of its statutory authority, in an arbitrary or capricious manner, and abused its discretion because it rejected the ALJ's conclusion.

Contrary to Gomez's contention, the APA specifically authorizes the Board to:

> change a finding of fact or conclusion of law made by the [ALJ], or [to] vacate or modify an order issued by the [ALJ], only if the agency determines . . . that the [ALJ] did not properly apply or interpret applicable law, agency rules, . . . or prior administrative decisions . . . . The agency shall state in writing the specific reason and legal basis for a change made under this subsection.

Tex. Gov't Code Ann. § 2001.058(e); *see also* 19 Tex. Admin. Code § 249.39 (2011) (State Bd. for Educator Certification, Final Decisions and Orders) (memorializing Board's ability to adopt order modifying findings of fact or conclusions of law in PFD submitted by ALJ in accordance with APA).  The Board complied with section 2001.058(e) by explaining in its final order the reasons and legal basis for its rejection of the ALJ's conclusions.  In the order, the Board explained that it interprets the phrase "the determination that a person is unfit to hold a certificate under the [Texas Education Code], Chapter 21, Subchapter B" as merely referring to the certification that the person is unworthy to hold, not as requiring a finding that the person violated chapter 21, subchapter B.  The Board found that the ALJ did not properly interpret the definition of "unworthy to instruct" because her recommendation was inconsistent with prior administrative decisions, which did not require the Board to identify a

9

subchapter B violation (i.e., an enumerated criminal conviction) to make an "unworthy to instruct" determination, and with applicable case law interpreting the meaning of "unworthy to instruct." *See Marrs v. Matthews*, 270 S.W. 586, 588 (Tex. Civ. App.—Texarkana 1925, writ ref'd) (holding legislature's intent in providing authority to revoke certificate of educator found "unworthy to instruct" was to exclude educators found morally unfit). Following its own interpretation of the statute and its rules, the Board determined that the ALJ's conclusions that Gomez's conduct was an act of "moral turpitude" sufficient to preclude a finding of "good moral character" (as those terms are defined by the Board's rules) provided a sufficient basis to conclude that Gomez was "unworthy to instruct." *See* 19 Tex. Admin. Code §§ 249.3(19), (25), (45), .15.

The Board's interpretation of the definition of "unworthy to instruct" is at the heart of the parties' dispute. The phrase "unfit to hold a certificate under the [Texas Education Code], Chapter 21, Subchapter B" is ambiguous and leaves room for policy determinations by the Board about the interplay between the "unworthy to instruct" definition and chapter 21, subchapter B of the education code. Therefore, the question before us is not whether the ALJ's interpretation of the definition and the statute is reasonable; it is whether the Board's interpretation is reasonable and does not contradict the plain language of either the rule or the statute. *See Dodd v. Meno*, 870 S.W.2d 4, 7 (Tex. 1994); *see also Poole v. Karnack Indep. Sch. Dist.*, 344 S.W.3d 440, 444 (Tex. App.—Austin 2011, no pet.) (finding agency's interpretation of statute reasonable when statute did not impose deadline for requesting assault leave and agency required leave request to be made within reasonable time of alleged assault).

The Board noted in its final order that the "unworthy to instruct" phrase has been part of educator-certification law since 1925. *See Marrs*, 270 S.W. at 588. In *Marrs*, the court considered whether the term "unworthy to instruct" was too vague to define a disqualification to hold a teacher's

certificate and determined that it was not. *Id.* The court stated that "unworthy" in this context means "the absence of those moral and mental qualities which are required to enable one to render the service essential to the accomplishment of the object which the law has in view" and imputes "moral delinquency to a degree of unfitness for the work at hand." *Id.* The court noted that while differences of opinion might exist about what qualities of character render someone unworthy to instruct, there can be no disagreement that an unworthy person should not be allowed to teach. *Id.* The court concluded that the legislature necessarily left the unworthiness determination to the Board because it would be too difficult to enumerate those qualities and would render the statute "incomplete, or so inflexible as to defeat the ends sought." *Id.*

A review of the education code's relevant parts and the history of the rule's definition of "unworthy to instruct" shows that the Board's interpretation is reasonable. Title 2, subtitle D, chapter 21 of the education code regulates educators in the public education system. *See generally* Tex. Educ. Code Ann. §§ 21.001-.707. In subchapter A, the education code provides that "[a] person may not be employed as a teacher . . . by a school district unless the person holds an appropriate certificate or permit issued as provided by Subchapter B." *Id.* § 21.003(a) (West Supp. 2010). Subchapter B of chapter 21 concerns the certification of educators and establishes the Board's structure, powers, and duties, including its mandate to propose rules providing "for the regulation of educators and the general administration of this subchapter," "for disciplinary proceedings, including the suspension or revocation of an educator certificate, as provided by Chapter 2001, Government Code," and "for the adoption, amendment, and enforcement of an educator's code of ethics." *Id.* §§ 21.031, .033, .040 (West 2006), .041(b)(1), (7), (8); *see generally id.* §§ 21.031-.060. Nothing in subchapter B limits the Board's authority to revoke a certificate or find that a person is "unworthy to instruct" to only a situation

11

in which the person has been convicted of the offenses listed in sections 21.058 and 21.060. Limiting the Board's authority in this manner would render superfluous the provision mandating that the Board propose rules for revoking an educator certificate.[7] *See* Tex. Gov't Code Ann. § 311.021(2) (West 2005) (presumption is that entire statute is intended to be effective).

In addition, the Board adopted the definition of "unworthy to instruct" before the adoption of education code sections 21.058 and 21.060, which were enacted and became effective in 2003 and 2007, respectively. When it adopted chapter 249 of the administrative code in 1999, the Board provided a detailed explanation for the definition of "unworthy to instruct." *See* 24 Tex. Reg. 2305 (1999) (Executive Summary for Reasoned Justification of New Chapter 249). In its justification for the definition of "unworthy to instruct," the Board explained that it derived the term from the former education code section related to the suspension and cancellation of a teacher's certificate. 24 Tex. Reg. 2308 (1999);

---

[7] Gomez argues that if the legislature had intended to adopt the definition of "unworthy to instruct" contained in *Marrs*, there would have been no need to pass sections 21.058 and 21.060 of the education code. But the legislature's provision of certain minimum standards does not show that it intended those sections to be the only grounds for the Board to find that an educator is unworthy to instruct and revoke his certificate. Section 21.058 provides for mandatory certificate revocation within five days of when the Board receives notice that a person has been convicted of a felony offense under title 5 of the penal code or an offense that requires the defendant to register as a sex offender under chapter 62 of the code of criminal procedure, and the victim of the offense is under 18 years of age. Tex. Educ. Code Ann. § 21.058(a) (West 2006); *see also* Tex. Penal Code Ann. §§ 19.01-22.12 (West 2011) (establishing offenses against the person, including criminal homicide, kidnapping, trafficking of persons, sexual offenses, and assaultive persons); Tex. Code Crim. Proc. Ann. arts. 62.001-.408 (West 2006 & Supp. 2010) (establishing sex offender registration program). Under these circumstances, certificate revocation is mandatory, "[n]otwithstanding Section 21.041(b)(7)," which establishes that the Board must provide for disciplinary proceedings to revoke a certificate. *Id.* § 21.058(b). Section 21.060 provides the Board with authority to revoke the certificate of a person who has been convicted of certain felony or misdemeanor offenses "relating to the duties and responsibilities of the education profession, including" but not limited to the list provided in the statute. *Id.* § 21.060 (West Supp. 2010). By providing the Board with a nonexclusive list of offenses for which it has discretionary authority to revoke a certificate after an educator's conviction and mandating it to revoke a certificate without a disciplinary proceeding after certain other convictions, the legislature merely simplified the disciplinary process in certain cases.

*see also* Tex. Gov't Code Ann. § 311.023(4).  It further explained that because the former code did not

define the term, the Board chose its meaning based on the term's application in prior disciplinary

decisions by the commissioner of education.  24 Tex. Reg. 2308 (1999); *see also* Tex. Gov't Code Ann.

§ 311.023(6) (administrative construction of statute may be considered).  Finally, the Board specifically

noted the court's holding in *Marrs* that "the Legislature's controlling purpose in authorizing a teacher's

certificate to be sanctioned for 'unworthiness' was to exclude 'teachers who were found to be morally

or mentally unfit.'"  24 Tex. Reg. 2308 (1999) (quoting *Marrs*, 270 S.W. at 588).

Under the Board's interpretation, engaging in conduct that rises to the level of indecent

exposure is conduct that renders a person "unworthy to instruct."[8]  The ALJ made findings of fact that

Sergeant Cavazos saw Gomez rubbing his exposed penis with his hand near the dance floor and that

Gomez engaged in this public conduct with reckless disregard for whether others could see it and for

purposes of sexual gratification.  These fact findings provided a sufficient basis for the ALJ's legal

conclusion that Gomez's conduct was an act of moral turpitude, which is defined in part as "base, vile, or

depraved acts that are intended to arouse or to gratify the sexual desire of the actor."  19 Tex. Admin. Code

§ 249.3(25) (2007).  In turn, the conclusion that Gomez's conduct was an act of moral turpitude supports

the ALJ's legal conclusion that an act of moral turpitude can preclude a finding of "good moral

---

[8]  The Board's rules regarding investigations provide further support for the Board's interpreting "unworthy to instruct" as encompassing acts of moral turpitude even without an accompanying criminal conviction.  Section 249.14 provides that the TEA staff, which provides administrative support to the Board, may set priorities for the investigation of complaints based on the severity and immediacy of the allegations and the likelihood of harm.  19 Tex. Admin. Code § 249.14(g) (2011) (State Bd. for Educator Certification, Complaint, Required Reporting, and Investigation; Investigative Notice; Filing of Petition).  All cases accepted for investigation must be placed in one of two priority groups.  *Id.*  Indecent exposure has been included in the "Priority 1" category of "conduct that indicates a risk to the health, safety, or welfare of a student or minor, parent of a student, fellow employee, or professional colleague" since section 249.14's adoption in 1999.  *Id.*

character," which is defined as "the virtues of a person as evidenced, *at a minimum*, *by his or her not having committed* crimes relating directly to the duties and responsibilities of the education profession . . . or *acts involving moral turpitude*." *Id.* § 249.3(19) (2007) (emphases added). A person who is not found to have "good moral character" fits the *Marrs* definition of "unworthy to instruct" because the person is "morally . . . unfit." 270 S.W. at 588. Thus, there was satisfactory evidence for the Board to conclude that Gomez is "unworthy to instruct" the youth of Texas under its interpretation of that term.[9] *See id.* § 249.15(b)(2).

When we consider the purpose of the overall statutory scheme for regulating educators, the history of rule 249.3, and the common law and former statutory provisions predating the rule, we conclude that the Board's interpretation of "unworthy to instruct" as encompassing indecent exposure—even without a criminal conviction—is reasonable. Furthermore, the Board's interpretation that the phrase "under the [Texas Education Code], Chapter 21, Subchapter B" modifies the certificate

[9] Gomez has not presented an issue challenging whether substantial evidence supports the Board's decision to revoke his certificate. *Compare* Tex. Gov't Code Ann. § 2001.174(2)(E) *with id.* § 2001.174(2)(F); *see City of Waco v. Texas Comm'n on Envtl. Quality*, 346 S.W.3d 781, 818 n.20 (Tex. App.—Austin 2011, pet. filed) (noting difference between term "substantial-evidence review" being used in broad sense as shorthand reference to entire scope of review under APA and in narrower sense meaning only determination of whether order is reasonably supported by substantial evidence considering reliable and probative evidence in whole record). To the extent his argument that the Board had no basis for imposing discipline against him could be construed as a substantial-evidence argument (in the narrower sense of the term), we presume that the Board's order is supported by substantial evidence, and Gomez bears the burden of proving otherwise. *See Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 453 (Tex. 1984). At the contested-case hearing, Gomez offered no evidence that he did not engage in the alleged conduct other than his own testimony, which was controverted by Sergeant Cavazos's testimony. The ALJ, as factfinder, determines the credibility of witnesses and the weight of their testimony. *Granek v. Texas State Bd. of Med. Exam'rs*, 172 S.W.3d 761, 778 (Tex. App.—Austin 2005, no pet.). If there is some reasonable basis in the record for the Board's decision, we will uphold it even if the evidence preponderates against it. *Charter Med.*, 665 S.W.2d at 452. Thus, if the evidence would support either affirmative or negative findings, we must uphold the Board's decision. *Id.* at 453. We conclude that substantial evidence supports the Board's decision to revoke Gomez's certificate.

that the person is being found unfit to hold does not contradict the plain language of the rule or the statute. Consequently, we will defer to the Board's interpretation of the rule. We overrule Gomez's first issue.[10]

**Admission of eyewitness testimony**

In his second issue, Gomez challenges the admission of Sergeant Cavazos's testimony at the December 2007 contested-case hearing because he contends that its admission violated the June 2007 order expunging records concerning his August 2003 arrest. Gomez argues that the expunction statute precludes a person who acquires knowledge of an arrest while a state employee and who knows of an order expunging the records and files relating to that arrest from disseminating or using the records or files. *See* Tex. Code Crim. Proc. art. 55.04 (West 2006). The Board responds that the expunction order only barred the use of records and files concerning Gomez's arrest, not eyewitness testimony about his conduct, and that it did not use prohibited materials to prepare or present its case to the ALJ.

We review rulings on the admission or exclusion of evidence at the administrative level under the abuse-of-discretion standard applied to trial courts. *City of Amarillo v. Railroad Comm'n of Tex.*, 894 S.W.2d 491, 495 (Tex. App.—Austin 1995, writ denied). A court abuses its discretion if it acts without reference to guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238,

---

[10] The Board contends that Gomez waived the issue of whether the Board committed error by rejecting the ALJ's recommendation that there was no basis to discipline him because he failed to raise it in his petition to the district court for judicial review. Gomez raised the issue of whether the Board erred by finding a basis to impose discipline against him, but the Board contends this is a different issue (although we note that the Board necessarily rejected the ALJ's recommendation by finding a basis to impose discipline). We will assume without deciding that Gomez preserved error on the issue because we have concluded that the Board did not err by rejecting the ALJ's recommendation and finding a basis to impose discipline against Gomez.

15

241-42 (Tex. 1985). We must uphold the ALJ's evidentiary ruling if there is any legitimate basis in the record to support it. *See Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

The Board filed its petition in October 2006. The expunction order was issued in June 2007, expunging any and all records "concerning the arrest on August 7, 2003." The order provided that a number of agencies, including the Board, were to "return all records and files concerning the arrest to the court, or if removal is impracticable, to obliterate all references to [Gomez] and notify the court of [their] action[s]." The Board's petition mentioned Sergeant Cavazos by name, but did not mention that Gomez had been arrested. The petition also asserted essentially the same description of the incident to which Sergeant Cavazos testified at the hearing. Thus, it is clear from the record that before filing the petition the Board's staff had talked to Sergeant Cavazos as part of its investigation of the incident.

As the ALJ pointed out in the order denying Gomez's motion to exclude evidence, Sergeant Cavazos testified at the hearing that he had not refreshed his memory from any record subject to the expunction order, and he obeyed the ALJ's admonition not to mention any fact relating to an arrest. Sergeant Cavazos testified that although he could recall the date of the incident and Gomez's name only after reviewing the Board's petition, the petition was the only document he used to refresh his memory. The remainder of his testimony was based only on his memory of the incident. The ALJ made a specific finding of fact in the PFD that "Cavazos did not use any document other than those filed in this docket to refresh his memory as to the date of the incident and [Gomez's] name" when preparing to testify at the hearing. Gomez has not pointed out any testimony which he asserts that Sergeant Cavazos derived from any expunged record.

As several of our sister courts have observed, "the legislature's intent in enacting the expunction statute was not to eradicate all evidence of the conduct underlying the expunged arrest."

16

*Ex parte S.C.*, 305 S.W.3d 258, 266 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (construing scope of expunction statute and concluding that expunction order was broader than authorized by statute because order included state agency's investigation records). When considering whether to allow Sergeant Cavazos's testimony about Gomez's conduct in this case, the ALJ relied on the holding of the Fourth Court of Appeals in a similar case in which an appellant argued that expunction precluded the agency's findings about conduct that served as the basis for her employment termination. *See Bustamante v. Bexar Cnty. Sheriff's Civil Serv. Comm'n*, 27 S.W.3d 50, 53 (Tex. App.—San Antonio 2000, no pet.). In *Bustamante*, the court held that the appellant's termination was proper because the agency relied on eyewitness testimony about witnesses' personal observations of the appellant's conduct, not on expunged records or files. *Id.* at 53-54. We reach the same conclusion here about the Board's revocation of Gomez's certificate. The ALJ did not abuse her discretion by allowing Sergeant Cavazos's eyewitness testimony. We overrule Gomez's second issue.

**Motion for leave to present additional evidence to the Board**

Gomez argues in his third issue that the district court erred by denying his motion for leave to present additional evidence to the Board.[11] *See* Tex. Gov't Code Ann. § 2001.175(c) (West 2008) (providing procedure for application to reviewing court to present additional evidence to state agency). He also contends that the district court could properly consider evidence outside of the administrative record of the "procedural irregularities" that he alleges occurred when the ALJ admitted evidence that had been ordered expunged. *See id.* § 2001.175(e) (West 2008). Section 2001.175(c)

---

[11] The district court did not issue an order denying the motion, which Gomez filed on November 30, 2009, six days after the court conducted the hearing on his petition for judicial review. The final judgment affirming the Board's decision was signed December 3, 2009, and stated that "all remedies not specifically granted herein are denied."

authorizes a reviewing court to remand a case to allow additional evidence to be presented to the agency, but only if the court is satisfied that (1) the evidence is material and (2) there were good reasons for the failure to present it in the proceeding before the agency. *Id.* § 2001.175(c). We review the district court's decision about a remand request for an abuse of discretion. *See Texas Dep't of Pub. Safety v. Story*, 115 S.W.3d 588, 594 (Tex. App.—Waco 2003, no pet.); *City of Port Arthur v. Southwestern Bell Tel. Co.*, 13 S.W.3d 841, 844 (Tex. App.—Austin 2000, no pet.).

Gomez sought to present evidence to the Board of a November 2009 order, which was entered by the same Hidalgo County District Court that had entered the 2007 expunction order. In the November 2009 order, the Hidalgo County District Court determined that the Texas Education Agency (TEA) had not complied with the 2007 expunction order and ordered TEA to return "all records and files concerning the arrest of [Gomez] to the Court." The order reflects that TEA turned over its records at the November 2009 Hidalgo County District Court hearing. Nothing in the November 2009 order indicates that the Hidalgo County District Court found that Sergeant Cavazos's testimony at Gomez's contested-case hearing violated its 2007 expunction order.

Gomez is correct that the district court could have considered evidence outside the record had he alleged that a procedural irregularity not reflected in the agency record occurred in the agency proceedings. *See* Tex. Gov't Code Ann. § 2001.175(e). Gomez has failed to allege this type of procedural irregularity here, however, contending instead that a procedural irregularity occurred when the ALJ admitted evidence that had been ordered expunged—presumably referring to Sergeant Cavazos's testimony. The ALJ's admission of Sergeant Cavazos's testimony is a matter fully documented within the agency record; thus, the district court properly did not consider evidence outside the record when reviewing the Board's decision.

18

In addition, the district court acted within its discretion by declining to remand this case to the Board to enable Gomez to present the November 2009 order to it. Gomez failed to satisfy at least one of the conditions required for remand because he did not explain in his motion how the additional evidence (the November 2009 order) is material. *See id.* § 2001.175(c). Gomez's argument that the Board used expunged records rests on his contention that Sergeant Cavazos's testimony was improper because he acquired knowledge of the arrest while a state employee and knew of the expunction order. But as we determined above, the Board could properly present Sergeant Cavazos's testimony because it was based on his personal knowledge of the incident. *See Bustamante,* 27 S.W.3d at 53-54. Gomez has never identified any specific evidence relied upon by the Board that he asserts came solely from the expunged records (as opposed to being contained in the Board's own investigation records).[12] We have upheld the ALJ's finding that Sergeant Cavazos did not rely on expunged records to refresh his memory. Without a showing that the Board actually used the expunged records, the Board's retention of the expunged records is immaterial.[13] We overrule Gomez's third issue.

---

[12] Gomez asserts that if the Board had complied with the expunction order, it would not have had Sergeant Cavazos's name. But the Board had begun conducting its own investigation well before the expunction order was issued in 2007. It filed its petition, which contained Sergeant Cavazos's name, in October 2006. *See Ex parte S.C.*, 305 S.W.3d 258, 266 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding expunction order compelling agency to turn over its own investigative files and records, instead of only records relating to arrest, was overly broad).

[13] As the Board points out, it is also questionable whether Gomez could demonstrate that there were good reasons for his failure to present the "additional evidence" in the proceeding before the agency. *See* Tex. Gov't Code Ann. § 2001.175(c) (West 2008). While it is true that he did not obtain the order until November 2009, the contested-case hearing occurred in December 2007. Gomez did not explain in his motion what caused him to wait until November 2009 to seek an order from the Hidalgo County District Court that the Board had violated the expunction order. The Board did not present any new evidence in the district-court proceeding for review of its final order. And at the contested-case hearing, as well as in his exceptions to the PFD and his motion for rehearing, which he filed in March 2008 and November 2008, Gomez made the same contention that he makes here about the Board's alleged violation of the expunction order. He argued during the proceeding

19

## CONCLUSION

Having overruled all of Gomez's issues on appeal, we affirm the district court's judgment.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed

Filed:   November 23, 2011

---

before the Board that the Board would not have had Sergeant Cavazos's name and other details about the incident if it had returned or destroyed all arrest records, so it is unclear why he waited until 2009 to seek an order from the Hidalgo County District Court that the Board violated the expunction order.