

# NUMBER 13-21-00331-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

| STATE BOARD FOR EDUCATOR CERTIFICATION, | Appellant, |
|---|---|
| v. | |
| DAVID DEMIGLIO, | Appellee. |

### On appeal from the 353rd District Court of Travis County, Texas.

# MEMORANDUM OPINION

**Before Justices Longoria, Silva, and Peña[1]**
**Memorandum Opinion by Justice Silva**

Appellant the State Board for Educator Certification (Board) appeals the district

---

[1] The Honorable Leticia Hinojosa, former Justice of this Court, did not participate in this decision because her term of office expired on December 31, 2022. In accordance with the appellate rules, she was replaced on panel by Justice Lionel Aron Peña Jr. *See* TEX. R. APP. P. 41.1(a).

court's order reversing the Board's final decision and order which ultimately suspended appellee David Demiglio's Texas Educator Certificates for a period of two years. By three issues, which we construe as one, the Board argues that the district court erred by reversing the Board's final decision and order by concluding it was not reasonably supported by substantial evidence. We reverse and render.

## I.    BACKGROUND[2]

The Texas Education Agency (TEA), on behalf of the Board, filed a petition requesting that an administrative law judge (ALJ) issue a recommendation to permanently revoke Demiglio's Texas Educator Certificates. As the basis of its request, the Board alleged that on February 28, 2018, Demiglio, the principal at Damon Independent School District (DISD), stated to a fellow DISD employee that he wished he could "shoot the teachers" at the school. According to the Board, Demiglio's behavior violated several provisions of the Texas Administrative Code and the Educator's Code of Ethics. The case proceeded to trial before an ALJ.

### A.    Trial

Destiny Crocker testified that she was an instructional facilitator at DISD. Crocker reported that on February 28, 2018, she and Demiglio were discussing student-led conferences that were occurring that week. According to Crocker, she posited to Demiglio that the following year the school should set aside a full or half day without classes so that the teachers were not staying so late to finish the conferences. Demiglio then

---

[2] This case is before this Court on transfer from the Third Court of Appeals in Austin pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001. Because this is a transfer case, we apply the precedent of the Austin Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.

responded that he "wished he could just shoot people." Crocker inquired about Demiglio's intent by asking if he was kidding, to which he said, "No, I really should be able to shoot people." Crocker stated that Demiglio clarified that "[he] wouldn't shoot [her;] [he] would just leave [her] to suffer [t]here." Crocker explained that Demiglio's demeanor did not appear to be one of humor. Further, Crocker noted that Demiglio's statement came just two weeks after a mass shooting at Marjory Stoneman Douglas High School in Parkland, Florida. Crocker insisted that Demiglio's statement and accompanying demeanor left her in fear for her life and afraid to return to school the following day. Crocker reported Demiglio's statements to DISD's superintendent Dr. Donald Rhodes that day.

Rhodes testified that he placed Demiglio on administrative leave on March 1, 2018, the morning following Crocker's report. When Rhodes confronted Demiglio, Demiglio reportedly said, "My career is over." Rhodes announced to the staff that Demiglio would not be returning for the remainder of the school year but did not explain why. Rhodes then turned the matter over to DISD's attorneys for investigation. Rhodes received Demiglio's resignation on March 2, 2018.

Michele Gierisch, a former teacher at DISD, testified that Demiglio sexually harassed and assaulted her while she was employed at DISD. Gierisch explained that Demiglio would enter her classroom during her conference period, close the door, and move her to a space in the classroom where others could not see them through the window in the door. Gierisch alleged Demiglio grabbed her buttocks and breasts, attempted to kiss her, and suggested they "run away together" using the school credit card. Gierisch could not recall exactly when the incidents occurred, and she was afraid to

3

report them because Demiglio told her nobody would believe her, and she would be fired. Gierisch reported the allegations to Rhodes on March 1, 2018.

DISD Chief of Police Troi Johnson testified that he was a school resource officer assigned to DISD during the 2017–2018 school year. Johnson explained that on the morning of March 1, 2018, Rhodes contacted him and informed him of Demiglio's statements. Johnston stated that he laughed when he first heard the allegation because he did not believe Demiglio would make such a statement. Johnson explained that he and Demiglio had discussed firearms in the past, and Demiglio expressed that he had no interest in firearms and was diametrically opposed to their use. Johnson noted that Demiglio acknowledged making the statement but insisted he did not mean it and was only joking.

Cheryl Leavitt, Rhodes's stepdaughter, testified that she encountered Gierisch at a New Year's Eve party on December 31, 2017. Leavitt described Gierisch as appearing intoxicated. Leavitt testified that during a conversation with Gierisch, Gierisch disclosed that "all the teachers" agreed that Crocker should be the new principal and that Gierisch and Crocker were trying to find a way to get Demiglio fired.

Demiglio also testified at trial. Demiglio admitted to making the statement to Crocker, but insisted it was made in jest and out of frustration. Demiglio explained that he was frustrated after receiving the students' benchmark scores for the annual standardized testing because many students were not where they needed to be, and he felt the teachers were failing them. Demiglio explained that he abhors guns, does not own one, has never owned one, and has never even fired one. Demiglio denied ever touching or

4

talking to Gierisch inappropriately and clarified that he did not have a school credit card so he could not have suggested they run away using the school credit card.

Several additional witnesses testified to Demiglio's character. Many of the witnesses, who were teachers, described him as the best principal they had worked for and denied ever seeing him get angry at students, faculty, or parents. Although none of the character witnesses were present when Demiglio made the statement to Crocker, each testified that he did not have a reputation for a propensity towards violence, and they did not believe the statement was made as a threat. Some of the witnesses testified that Demiglio was frequently in their classroom with the door closed during their conference period but never made any inappropriate comments or gestures.

At the conclusion of the hearing, the ALJ issued a proposal for decision, which concluded that the Board failed to meet its burden of proof for both allegations and recommended that the Board not revoke Demiglio's educator certificates. In his thirty-page proposal, the ALJ recounted and summarized the testimony of each witness and the relevant exhibits. As relevant here, the ALJ issued findings of fact and conclusions of law, which read:

### VII.   FINDINGS OF FACT

. . . .

4.   On February 28, 2018, [Demiglio] made a statement to [Crocker], who was a teacher under his supervision, to the effect that he wished he could shoot some teachers.

5.   The statement made by [Demiglio] to [Crocker] was in frustration at the school receiving lower-than-expected benchmarking scores, which [Demiglio] was reviewing when he made the statement to [Crocker].

6.   For his statement to be deemed a threat, [Demiglio] must have

5

intended to inflict injury.

7. [Demiglio] stating that he wished he could take an action did not mean that he would take that action.

8. [Demiglio] did not intend to shoot teachers.

9. [Demiglio] did not have the capability to shoot teachers because he did not own or know how to load a firearm

10. [Demiglio] had an aversion to firearms.

11. There was no corroborating evidence that [Demiglio] had the character or means to shoot people.

. . . .

25. [The Board] did not meet its burden of proof to show, by a preponderance of the evidence, that [Demiglio] made a threat of violence against school district employees.

26. [The Board] did not meet its burden of proof to show, by a preponderance of the evidence, that [Demiglio] sexually harassed [Gierisch].

## VIII.   CONCLUSIONS OF LAW

. . . .

5. [Demiglio] is of good moral character and is worthy to instruct or supervise the youth of this state. 19 TEX. ADMIN. CODE §§ 247.1(e)(9), 247.2(1)(J); 249.3(60).

6. The preponderance of the evidence failed to establish that [Demiglio] used institutional or professional privileges for personal or partisan advantage. 19 TEX. ADMIN. CODE § 247.2(1)(D).

7. The preponderance of the evidence failed to establish that [Demiglio] made threats of violence against school district employees, school board members, students, or parents of students. 19 TEX. ADMIN. CODE § 247.2(1)(I).

8. The preponderance of the evidence failed to establish that [Demiglio] interfered with a colleague's exercise of political, professional, or citizenship rights and responsibilities. 19 TEX. ADMIN. CODE § 247.2(2)(D).

6

9.  The preponderance of the evidence failed to establish that [Demiglio] used coercive means or promise of special treatment in order to influence professional decisions or colleagues. 19 TEX. ADMIN. CODE § 247.2(2)(F).

10. The preponderance of the evidence failed to establish that [Demiglio] violated a provision of the Educator's Code of Ethics. 19 TEX. ADMIN. CODE § 249.15(b)(3).

11. The preponderance of the evidence failed to establish that [Demiglio] committed an act that would constitute an offense (without regard to whether there has been a criminal conviction) that is considered to relate directly to the duties and responsibilities of the education profession, including offenses occurring wholly or in part on school property or at a school-sponsored activity. 19 TEX. ADMIN. CODE § 249.15(b)(10)(F).

12. [Demiglio] complied with state regulations, written local school board policies, and other state and federal laws. 19 TEX. ADMIN. CODE § 247.2(1)(G).

13. The Board should not revoke [Demiglio's] Texas Educator Certificates.

## B. Hearing Before the Board

The Board staff challenged the ALJ's findings and conclusions in a hearing before the Board itself, arguing that Demiglio's certificates should be revoked because the ALJ's findings were erroneous. Specifically, Board staff recommended the Board delete findings of fact 6 and 25 and amend conclusions of law 7, 10, and 13. Regarding finding of fact 6, Board staff argued that the finding was a conclusion of law and an incorrect statement of the law. Thus, Board staff argued that even if the Board accepts the ALJ's recommendations, that it should delete finding of fact 6.

The Board issued its final decision and order, which struck the ALJ's findings of fact 6 and 25, concluding that finding of fact 6 was "actually a conclusion of law" that was "an incorrect interpretation of 19 Texas Administrative Code [§] 247.2(1)(I)." The order

7

explained that "[t]he Board's rules do not require that an individual determine whether a threatening person actually intends to inflict injury before it becomes a threat." The Board also concluded that finding 25 was another incorrect conclusion of law. Based on the amended findings, the Board modified conclusions of law 7, 10, and 13 as follows:

7. The preponderance of the evidence establishes that [Demiglio] made threats of violence against school district employees, school board members, students, or parents of students. 19 TEX. ADMIN. CODE §[ ]247.2(1)(I).

10. The preponderance of the evidence established that [Demiglio] violated a provision of the Educator's Code of Ethics. 19 TEX. ADMIN. CODE §[ ]249.15(b)(3).

13. Based on the [f]indings of [f]act and [c]onclusions of [l]aw, [Demiglio's] educator certificate should be SUSPENDED for TWO (2) YEARS.

The Board noted that finding of fact 6, as a conclusion of law, was contrary to the Texas Administrative Code. The Board adopted the remainder of the ALJ's recommended findings of fact and conclusions of law, and suspended Demiglio's educator certificates for a period of two years. Demiglio timely filed a motion for rehearing, which was overruled by operation of law. *See* TEX. GOV'T CODE ANN. § 2001.146(c).

## C. Judicial Review by the District Court

Demiglio filed a petition for judicial review, arguing that the Board's decision was not supported by substantial evidence and was thus arbitrary and capricious. Specifically, Demiglio asserted that the Board's reasoning for striking finding of fact 6 was erroneous because it "is clearly not a [c]onclusion of [l]aw." Rather, Demiglio contended the Board impermissibly substituted its judgment for the ALJ's. Demiglio further argued that the Board's rules "do require a determination of intent." Demiglio pointed to 19 Texas Administrative Code § 249.17(c), which permits the Board to consider "whether the

8

misconduct was premeditated or intentional" when seeking, proposing, or making a disciplinary decision. 19 TEX. ADMIN. CODE § 249.17(c) (Tex. Bd. for Educator Certification, Decision-Making Guidelines).

The district court issued a final judgment that reversed the Board's final decision and order. The district court concluded that the Board's final decision and order was "not reasonably supported by substantial evidence." The Board appealed.

## II. STANDARD OF REVIEW

### A. Judicial Review

In a suit for judicial review of an administrative decision, "a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion." TEX. GOV'T CODE ANN. § 2001.174. However, a court

> shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole.

*Id.* § 2001.174(2)(E). A review under the substantial evidence standard is a limited one that requires only more than a scintilla of evidence to support an agency's decision. *Edinburg Consol. Indep. Sch. Dist. v. Esparza*, 603 S.W.3d 468, 478 (Tex. App.—Corpus Christi–Edinburg 2020, no pet.). "Essentially, this is a rational-basis test to determine, as a matter of law, whether an agency's order finds reasonable support in the record." *Id.* (quoting *Jenkins v. Crosby Indep. Sch. Dist.*, 537 S.W.3d 142, 149 (Tex. App.—Austin 2017, no pet.)).

Whether the Board's determination meets the substantial evidence standard is a

question of law. *Id.* Our concern centers on whether the Board's decision was reasonable, not whether it was correct. *Id.* (citing *Jenkins*, 537 S.W.3d at 149). "In our review of the district court's judgment, we focus, as did the district court, on the decision of the [Board]." *Id.* at 477. "[A court] cannot strike down an administrative order on the ground that the evidence heard by the [c]ourt indicated that a more equitable one could be entered." *H.G. Sledge, Inc. v. Prospective Inv. & Trading Co.*, 36 S.W.3d 597, 604 (Tex. App.—Austin 2000, pet. denied) (quoting *R.R. Comm'n v. Mackhank Petrol. Co.*, 190 S.W.2d 802, 804 (Tex. 1945)).

## B.    Board's Ruling

When reviewing an interpretation of an agency rule, our concern is not "whether the ALJ's interpretation of the definition and the statute is reasonable; it is whether the Board's interpretation is reasonable and does not contradict the plain language of either the rule or the statute." *Gomez v. Tex. Educ. Agency, Educator Certification & Standards Div.*, 354 S.W.3d 905, 914 (Tex. App.—Austin 2011, pet. denied) (citing *Dodd v. Meno*, 870 S.W.2d 4, 7 (Tex. 1994)). "An administrative agency's interpretation of its own regulations is also entitled to deference by the courts." *Stark v. Geeslin*, 213 S.W.3d 406, 416 (Tex. App.—Austin 2006, pet. denied) (citing *Public. Util. Comm'n v. Gulf States Utils. Co.*, 809 S.W.2d 201, 207 (Tex. 1991)).

"We construe both statutes and administrative rules under traditional principles of statutory construction." *Tex. Tel. Ass'n v. Pub. Util. Comm'n of Tex.*, 653 S.W.3d 227, 246 (Tex. App.—Austin 2022, no pet.) (citing *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011)). In doing so, "[w]e presume the Legislature 'chooses

10

a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen.'" *First Cash, Ltd. v. JQ-Parkdale, LLC*, 538 S.W.3d 189, 195 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.) (quoting *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325–26 (Tex. 2017)).

### III.   APPLICABLE LAW

The Board may take certain disciplinary action against educators based on satisfactory evidence that, among other things, the person is unworthy to instruct or supervise the youth of this state, violated a provision of the Educators' Code of Ethics, or committed certain criminal offenses. 19 TEX. ADMIN. CODE § 249.15(a), (b)(2), (b)(3), (b)(10) (Tex. Bd. for Educator Certification, Disciplinary Action by State Board for Educator Certification). Among the disciplinary actions the Board may take is suspending an educator's certificate for a set term. *Id.* § 249.15(a)(3). When a complaint is made against an educator, the TEA may initiate an investigation and place a notice on the educator's certificate that they are currently under investigation. *Id.* § 249.14(l) (Tex. Bd. for Educator Certification, Complaint, Required Reporting, and Investigation; Investigative Notice; Filing of Petition). The TEA may then file a petition seeking sanctions pursuant to § 249.15. *Id.* § 249.14(p).

Once a petition is filed, the TEA refers the matter to the State Office of Administrative Hearings for trial before an ALJ. *Id.* § 249.18. After the hearing, the ALJ "shall submit the proposal for decision to the referring agency and furnish a copy to each party." 1 TEX. ADMIN. CODE § 155.507(a) (State Off. of Admin. Hearings, Proposals for

11

Decision; Exceptions and Replies); *see* 19 TEX. ADMIN. CODE § 249.36 (Tex. Bd. For Educator Certification, Proposal for Decision). The Board "may adopt an order modifying findings of fact or conclusions of law in a proposal for decision submitted by the [ALJ]." 19 TEX. ADMIN. CODE § 249.39(d) (Tex. Bd. For Educator Certification, Final Decisions and Orders). The Board's authority is limited, however; the Board may only modify the order if it determines:

(1) that the administrative law judge did not properly apply or interpret applicable law, agency rules, written policies provided under Subsection (c), or prior administrative decisions;

(2) that a prior administrative decision on which the administrative law judge relied is incorrect or should be changed; or

(3) that a technical error in a finding of fact should be changed.

TEX. GOV'T CODE ANN. § 2001.058(e). To comply with § 2001.058, an agency must "'explain with particularity its specific reason and legal basis for each change made' pursuant to the section." *Hyundai Motor Am. v. New World Car Nissan, Inc.*, 581 S.W.3d 831, 837 (Tex. App.—Austin 2019, no pet.) (quoting *Sanchez v. Tex. State Bd. of Med. Exam'rs*, 229 S.W.3d 498, 515 (Tex. App.—Austin 2007, no pet.)). "To meet this requirement, the agency must 'articulate a rational connection between an underlying agency policy and the altered finding of fact or conclusion of law.'" *Id.* (quoting *Sanchez*, 229 S.W.3d at 515).

The Educator's Code of Ethics prohibits educators from making "threats of violence against school district employees, school board members, students, or parents of students." 19 TEX. ADMIN. CODE § 247.2(1)(I) (Tex. Bd. for Educator Certification, Code of Ethics and Standard Practices for Texas Educators). Additionally, "[t]he educator shall be

12

of good moral character and be worthy to instruct or supervise the youth of this state." *Id.* § 247.2(1)(J).

## IV.    ANALYSIS

### A.    Finding of Fact 6

Because the gravamen of the Board's argument is that its interpretation of Standard 1.9 of the Code of Ethics, which served as the basis for modifying finding of fact 6, was reasonable and does not contradict the plain language of the rule, we begin our analysis here. *See Hyundai Motor Am.*, 581 S.W.3d at 837. We note that Standard 1.9 does not specify whether a threat of violence must be accompanied by an intent to actually commit the underlying violence. *See* 19 TEX. ADMIN. CODE § 247.2(1)(I). However, for reasons explained below, we do not believe that the Board's interpretation is unreasonable or conflicts with the plain language of the rule. *See Gomez*, 354 S.W.3d at 914.

Demiglio argues that the ALJ properly relied on the definition of threat from Merriam-Webster's Online Dictionary, which the ALJ found requires a threat to be accompanied by an intent to inflict injury. *See Threat*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/threat (last visited March 13, 2023) (defining "threat" first as "an expression of intention to inflict evil, injury, or damage"). However, Merriam-Webster's Online Dictionary provides an alternative definition of threat: "an indication of something impending." *Id.* (alternative definition). Even so, the definition used by the ALJ and urged by Demiglio does not require an intent to inflict evil, injury, or damage; rather, it merely requires the *expression* of an intent. *See id.* One can

13

express an intent without actually possessing it. Regardless, our review does not focus on whether the ALJ's interpretation of the rule is reasonable, but instead on whether the Board's interpretation of the rule is reasonable. *See Gomez*, 354 S.W.3d at 914.

The Board determined that the term "threat" as used in Standard 1.9 does not require an actual intent to cause harm—an interpretation to which we defer. *See Stark*, 213 S.W.3d at 416.[3] Nothing in Standard 1.9 expressly requires a specific scienter requirement; thus, the Board's interpretation that it does not require an intent to cause harm is not contrary to the plain language of the rule. *See* 19 TEX. ADMIN. CODE § 247.2(1)(I). In contrast, other standards within the Educator Code of Ethics do have a specific scienter requirement. *See, e.g.*, 19 TEX. ADMIN. CODE § 247.2(1)(B) ("The educator shall not intentionally, knowingly, or recklessly misappropriate, divert, or use monies, personnel, property, or equipment committed to his or her charge for personal gain or advantage."). We must presume that a specific scienter requirement was excluded from Standard 1.9 purposefully. *See First Cash, Ltd.*, 538 S.W.3d at 195.

---

[3] We observe that the Board's interpretation, wherein *intent to cause harm* is not required, is similar to that of the definition for the offense of criminal terroristic threat. *See* TEX. PENAL CODE ANN. § 22.07(a) (providing that a person commits the offense of terroristic threat if he "threatens to commit any offense involving violence . . . with intent to . . . place any person in fear of imminent serious bodily injury"); *Williams v. State*, 194 S.W.3d 568, 574–75 (Tex. App.—Houston [14th Dist.] 2006), *aff'd*, 252 S.W.3d 353 (Tex. Crim. App. 2008) ("It is not necessary for the victim [of a terroristic threat] to actually be placed in fear of imminent serious bodily injury or for the accused to have the capability or the intention to actually carry out the threat."); *see also Colorado County v. Staff*, 510 S.W.3d 435, 448 (Tex. 2017) (permitting courts to consider other statutory definitions in determining the ordinary and common meaning of an undefined word).

Although whether a statement constitutes a terroristic threat ordinarily requires a finding that the actor intended to place a person in fear of serious bodily injury, we do not engage in an analysis of whether Demiglio carried such intent. *See* TEX. PENAL CODE ANN. § 22.07(a). Rather, our review is limited to whether the term "threat" as used in the Educator Code of Ethics requires an intent to cause harm, which the Board concluded that it did not. *See Gomez v. Tex. Educ. Agency, Educator Certification & Standards Div.*, 354 S.W.3d 905, 914 (Tex. App.—Austin 2011, pet. denied). Thus, nothing in this opinion should be interpreted as concluding that Demiglio's actions constituted a criminal offense.

Demiglio also asserts that the Board's decision was unreasonable because it was incorrect in its conclusion that finding of fact 6 was a conclusion of law rather than a finding of fact. However, we agree with the Board that a determination as to what degree of culpability an actor must possess and as to what act is a conclusion of law, not a finding of fact. Demiglio further complains that "[t]he Board's interpretation of the word threat does not follow legal precedent and thus is an improper modification of the ALJ's Final Decision and Order." However, Demiglio does not point to any legal precedent to the contrary and we find none.[4]

Lastly, Demiglio suggests that the Board's modification is not supported by substantial evidence and that the Board failed to cite to one piece of evidence "because there was not a piece of evidence the Board could site [sic] to support its modification." As noted, the Board removed finding of fact 6 as an improper conclusion of law and stated as much in its reasoning. *See* TEX. GOV'T CODE ANN. § 2001.058(e). Further, whether Standard 1.9 requires a threat to be accompanied by an intent to commit harm is a policy decision left to the Board. *See id.* To that, Demiglio argues that "[t]he Board's review of an ALJ decision is not the time, place, or proper forum for policy or rule making." However, "that a prior administrative decision on which the [ALJ] relied is incorrect or should be changed" is one of the express grounds upon which an agency may modify an ALJ's findings. *See id.* § 2001.058(e)(2).

---

[4] Demiglio does argue that the Board failed to follow its own decision-making guidelines. *See* 19 TEX. ADMIN. CODE § 249.17(c). However, the guidelines are just that: guidelines that the Board may consider when determining what disciplinary action may be appropriate. *See id.* While the guidelines do permit the Board to consider "whether the misconduct was premeditated or intentional," they do not prohibit disciplinary action for an action that was anything but premeditated or intentional. *See id.*

15

Accordingly, we conclude the Board's interpretation of Standard 1.9 was reasonable and not contrary to the plain language of the rule. *See Gomez*, 354 S.W.3d at 914; *see also* 19 TEX. ADMIN. CODE § 247.2(1)(I). Because the Board's interpretation of Standard 1.9 served as its basis for striking finding of fact 6, we conclude that the Board acted appropriately in striking finding of fact 6. *See* TEX. GOV'T CODE ANN. § 2001.058(e).

**B.     Finding of Fact 25 and Conclusions of Law 7, 10, and 13**

Based on the Board's removal of finding of fact 6, the Board struck finding of fact 25 and modified conclusions of law 7, 10, and 13. Like finding of fact 6, the Board determined that finding of fact 25, which stated that the Board did not meet its burden of proof, was "an incorrect conclusion of law." The Board pointed to the ALJ's finding that "[Demiglio] made a statement to [Crocker], who was a teacher under his supervision, to the effect that he wished he could shoot some teachers" to support striking finding of fact 25. *See Hyundai Motor Am.*, 581 S.W.3d at 837. It is undisputed that Demiglio made the statement that serves as the basis of this administrative action—Demiglio himself testified that he made the statement.

Conclusions of law 7 and 10 were similarly modified based on the ALJ's misinterpretation of the Educator's Code of Ethics Standard 1.9's use of "threat." *See* 19 TEX. ADMIN. CODE § 247.2(1)(I). The Board relied on the same rationale to modify conclusions of law 7 and 10 as its decision to remove findings of fact 6 and 25: the ALJ misinterpreted Standard 1.9 to require the intent to actually inflict harm before a statement could be deemed a threat. *See* TEX. GOV'T CODE ANN. § 2001.058(e). The Board concluded that the ALJ's finding that Demiglio made the statement in question supported

16

the conclusion that the preponderance of the evidence established that Demiglio made a "threat in violation of the Educator's Code of Ethics." *See* TEX. GOV'T CODE ANN. § 2001.058(e); *Hyundai Motor Am.*, 581 S.W.3d at 837.

Finally, the Board concluded that the modifications supported suspending Demiglio's certificate for two years "[t]o reflect the seriousness of [the] conduct and to deter other educators." *See Hyundai Motor Am.*, 581 S.W.3d at 837. The Board also noted that "[g]iven the current reality of frequent mass violence in schools, all threats must be taken seriously regardless of the threatening person's actual intent." *See id.*

We conclude that the Board again acted within its limitations by striking finding of fact 25 and modifying conclusions of law 7, 10, and 13. *See* TEX. GOV'T CODE ANN. § 2001.058(e). Further, the Board sufficiently "articulate[d] a rational connection between an underlying agency policy and the altered finding of fact or conclusion of law." *See Hyundai Motor Am.*, 581 S.W.3d at 837.

## C.    Summary

Because we conclude that the Board acted within its authority to strike findings of fact 6 and 25 and modify conclusions of law 7, 10, and 13, we must consider whether the district court erred by concluding the Board's final order was not supported by substantial evidence. *See* TEX. GOV'T CODE ANN. § 2001.174(2)(E). The district court was prohibited from substituting its own judgment for that of the Board's judgment on the weight of the evidence or questions committed to the Board's discretion. *See id.* § 2001.174. A substantial evidence review of the Board's ruling requires us to determine whether it is supported by more than a scintilla of evidence, reasonably supported by the record. *See*

*Esparza*, 603 S.W.3d at 478. Whether Demiglio's statement constituted a threat under the Board's rule is a question committed to the Board's discretion. *See* TEX. GOV'T CODE ANN. § 2001.174(2)(E). Because the ALJ found that Demiglio made the statement—and it is undisputed—we conclude that the Board's decision was supported by substantial evidence. *See id.*; *Esparza*, 603 S.W.3d at 478. We sustain the Board's sole issue.

### V.    CONCLUSION

We reverse the district court's judgment and render judgment affirming the Board's decision.

CLARISSA SILVA
Justice

Delivered and filed on the
6th day of April, 2023.

18